Paul GASKILL and Alan L. Hess, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Earl D. GORDON, et al., Defendants–Appellants,

Appeal of Jeffrey Cagan, et al.

Nos. 96–1115, 96–3759.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1998.

Decided Nov. 3, 1998.

Stephen B. Diamond, Lawrence W. Schad, Beller, Schad & Diamond, Chicago, IL, for Paul Gaskill and Alan L. Hess in No. 96–1115.

Steven P. Handler, McDermott, Will & Emery, Chicago, IL, Martha W. Berzon, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for Earl D. Gordon, Kenneth F. Boula, Financial Concepts Limited, KFB Securities, Inc., Gordon Management Services, Inc., Mega Media Advertising, Greater Metropolitan Realty, Illinois Investors Fund, Continental Investment Security Enterprises, and Investor Services Unlimited in No. 96–1115.

Ronald R. Peterson (argued), Timothy J. Chorvat, Jenner & Block, Chicago, IL, Stephen B. Diamond, Lawrence W. Schad, Beeler, Schad & Diamond, Chicago, IL, for Cagan Management, Inc., Beeler, Schad & Diamond, and Morrison & Morrison in Nos. 96–1115 and 96–3759.

Ronald R. Peterson (argued), Timothy J. Chorvat, Jenner & Block, Chicago, IL, Stephen B. Diamond, Lawrence W. Schad, Beeler, Schad & Diamond, Chicago, IL, David A. Genelly, Fishman & Merrick, Chicago, IL, for Fishman & Merrick in Nos. 96–1115 and 96–3759.

Ronald R. Peterson (argued), Timothy J. Chorvat, Jenner & Block, Chicago, IL, Stephen B. Diamond, Lawrence W. Schad, Beeler, Schad & Diamond, Chicago, IL, for Jeffrey Cagan in No. 96–3759.

Stephen B. Diamond, Lawrence W. Schad, James Shedden, Beeler, Schad & Diamond, Chicago, IL, for Paul Gaskill and Alan L. Hess in No. 96–3759.

Steven P. Handler, McDermott, Will & Emery, Chicago, IL, Martha W. Berzon, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, Steven G.M. Stein, Stein, Ray & Conway, Chicago, IL, for Earl D. Gordon, Kenneth F. Boula, Financial Concepts Ltd., KFB Securities, Inc., and Gordon Management Services, Inc. in No. 96–3759.

Before POSNER, Chief Judge, and CUMMINGS and EVANS, Circuit Judges.

POSNER, Chief Judge.

In 1988 a class action was filed in federal district court on behalf of a number of investors who had bought limited partnership interests from Earl Gordon and Kenneth Boula. The suit claimed that the defendants had defrauded the members of the class by a Ponzi scheme, in violation of federal and state law. The court appointed Jeffrey Cagan as receiver of the properties controlled by the defendants. In seven years of litigation, primarily against secured creditors who had claims against the properties, Cagan and the lawyers and accountants retained by him managed to liquidate the defendants' properties for some $40 million. Of this total, about $10 million went to secured creditors and another $10 million to pay various administrative expenses, leaving $20 million for the investors and for Cagan and the other professionals who had assisted him in creating this fund. The judge awarded the professionals (for simplicity we'll pretend they're all lawyers and discuss this as a pure attorneys' fee case) 38 percent of the fund, or roughly $8 million; they seek another $2 million in this appeal. There are no appellees. The appellants notified the members of the class that they were seeking additional fees, which would of course reduce the net recovery of the class members, but no one has filed a brief in opposition to the appeal. Perhaps none of the members has a large enough stake to make participating in the appeal worthwhile, but that is only a conjecture. Or perhaps they are puzzled at being notified by the class lawyers that these lawyers are now taking an adversary position to them, so that they would have to go out and hire new lawyers to defend the fund against the claims of their old lawyers. We have previously expressed, and here repeat, our concern about the lack of adversary procedure in class action fee matters. *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 573–74 (7th Cir.1992).

When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (dictum); *In re Continental Illinois Securities Litigation, supra*, 962 F.2d at 572–73; *In re Thirteen Appeals*, 56 F.3d 295, 305–06 (1st Cir.1995); *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1299–1301 (9th Cir.1994); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir.1991), in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis. The typical contingent fee is between 33 and 40 percent; but in recognition of the fixed-cost component in litigation, it is usually smaller when as in this case a multimillion dollar judgment is obtained. *In re Continental Illinois Securities Litigation, supra*, 962 F.2d at 572. Some courts have suggested 25 percent as a bench-

mark figure for a contingent-fee award in a class action. *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997); *Camden I Condominium Ass'n, Inc. v. Dunkle, supra*, 946 F.2d at 775. So at first glance the district judge's award of 38 percent of $20 million was generous. But against this the appellants make two points.

The first is that they were acting on behalf of the receivership and not just the class, and they say that receivers like bankruptcy trustees are entitled to be paid on an hourly basis; it is on that basis that they compute the proper fee as $10 million. But we cannot see what there is about receiverships, or for that matter about trusteeships in bankruptcy, that should exclude the use of the contingent-fee methodology. When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set. *In re Continental Illinois Securities Litigation, supra*, 962 F.2d at 572; *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir.1986). The judge, in other words, is trying to mimic the market in legal services. The principle is fully applicable to bankruptcy, *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir.1995), so that if in a particular bankruptcy the principal service performed by the trustee is to litigate a tort claim on the debtor's behalf, then to compensate him on a contingent-fee basis, just as if he had been hired by the debtor, would be entirely appropriate and is expressly authorized. 11 U.S.C. § 328(a). That is not the situation here. Less than 20 percent of the value generated by the appellants' efforts came from money judgments in lawsuits. The rest came from warding off foreclosures, managing property, and liquidating assets. And so the tort parallel fails. But contingent fees are used in a wide variety of legal settings besides tort litigation, not only as an efficient risk-shifting and litigation-financing device but also as a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome.

Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would. And this was a successful case. So there is a paradox in the lawyers' seeking compensation on an hourly basis. No doubt if they had spent relatively few hours to generate the fund they would be asking for a value-based, contingency-type award to compensate them for the risk of loss. They want to be allowed to choose between the hourly and value-based method on the basis of which yields the higher fee. That is not a reasonable choice to give them and nothing in the law of bankruptcy or receivership entitles them to it.

The appellants' second objection to the district judge's approach is that it ignores the benefit they conferred on the secured creditors—a cool $10 million. It is certainly the case that when lawyers or other professionals confer benefits in circumstances in which they can reasonably be expected to be compensated, they have a legal claim against the beneficiaries for a reasonable fee. *Maksym v. Loesch*, 937 F.2d 1237, 1246 (7th Cir.1991). That is an important part of the law of restitution. One peculiarity here, however, is that these lawyers were litigating against, not for, the secured creditors; the management of the properties by the receiver and his agents may have benefited the secured creditors, but the litigation may have imposed an offsetting cost on them.

Another peculiarity is that the appellants are seeking the additional fees not from the secured creditors but from the investors. We do not see why the investors should be asked to pay for benefits conferred on the secured creditors. Of course there is a sense in which the investors benefited from the payments to those creditors, because the secured creditors have superior claims to the defendants' assets. But if the appellants really conferred benefits on the secured creditors, surely the latter should pick up at least part of the cost of obtaining those benefits. We suspect that the appellants are not seeking fees from the secured creditors because they fear that the latter may squawk (especially since these lawyers were their adversaries!), whereas the investors' stakes may, as we speculated earlier, be too slight (or being abandoned by their lawyers too confusing) to have incited any of them to protest. This is an additional reason not to allow the

appellants to obtain fees from the investors for benefits conferred on the secured creditors. Cf. *Mars Steel Corp. v. Continental Illinois National Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir.1987).

We conclude that there is no basis for upsetting the district judge's fee award.

AFFIRMED.