WILLIAM A. FLETCHER, Circuit Judge:
 

 In this appeal, we consider whether, in a Chapter 7 bankruptcy proceeding, an obligation to pay for pre-petition legal services is subject to automatic stay under 11 U.S.C. § 362 and discharge under 11 U.S.C. § 727, when the debtor has agreed to pay for those services in installments pursuant to Federal Rule of Bankruptcy Procedure 1006(b). We also review the bankruptcy court’s decision to reduce attorneys’ fees. We hold that the obligation to pay for pre-petition services was subject to automatic stay and discharge, and that the bankruptcy court did not abuse its discretion in reducing attorneys’ fees. We therefore affirm.
 

 I
 

 On April 8, 1998, Jerry B. Jastrem entered into an agreement with the American Law Center, P.C. (“ALC”), by which Jastrem was to pay $1,000.00 to ALC for representation in a “simple Chapter 7 bankruptcy.” The agreement did not include “Reaffirmation Agreements, Lien Avoidances, or other adversarial proceedings,” the occurrence of which would result in “an additional charge to be determined at a later date.” Jastrem agreed to pay ALC in four installments of $250.00 each, due on April 30, May 14, May 28, and June 11, 1998. Prior to filing, Jastrem provided ALC with checks post-dated to reflect the installment due-dates.
 

 On April 9, 1998, Jastrem, through ALC attorney Michael E. O’Neal, filed a voluntary petition for Chapter 7 bankruptcy. Jastrem agreed to pay the filing fee for the petition in installments, as allowed by Federal Rule of Bankruptcy Procedure 1006(b). Jastrem paid $87.00 of the $175.00 filing fee at the time of filing, agreeing to pay the remainder in four installments of $22.00 each, due on May 11, June 8, July 8, and August 7, 1998. Accompanying Jastrem’s petition, O’Neal filed a Statement Pursuant to Rule 2016(b). O’Neal declared, inter alia, that the attorneys’ fees for ALC’s representation of Jastrem would be $1,000.00; that ALC had not received any attorneys’ fees prior to the filing of the petition; and that ALC had not received any transfer, assignment, or pledge of property from the debtor. Even though the last payment of the filing fee was not due until August 7, 1998, the filing fee was paid in full on April 21,1998.
 

 On April 23, 1998, the bankruptcy court ordered ALC to disclose its attorneys’ fee arrangement with Jastrem. After a hearing, the bankruptcy court ruled that all fees for services provided by ALC prior to the filing of Jastrem’s petition were subject to automatic stay and discharge in bankruptcy. The bankruptcy court then reduced ALC’s total attorneys’ fees from $1,000.00 to $750.00. Finally, the bankruptcy court found that of the $750.00 in allowable fees, $511.35 was attributable to ALC’s pre-petition services, while $238.65 was attributable to ALC’s post-petition services. The bankruptcy court ordered that ALC was stayed from collecting the $511.35, that ALC could retain $238.65 for its post-petition services, and that ALC must return to Jastrem anything in excess of this amount.
 

 The district court affirmed the decision of the bankruptcy court. We have
 
 *441
 
 jurisdiction under 28 U.S.C. § 158(a). We review the bankruptcy court’s conclusions of law de novo and its factual findings for clear error.
 
 Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),
 
 177 F.3d 774, 782 (9th Cir.1999). We affirm.
 

 II
 

 In
 
 Hessinger & Associates v. United States Trustee (In re Biggar),
 
 110 F.3d 685 (9th Cir.1997), a case strikingly similar to this one, we held that an obligation to pay for pre-petition legal services is a debt subject to discharge. In
 
 Biggar,
 
 as here, attorneys’ fees for pre-petition services were to be paid in installments due after the filing of the bankruptcy petition.
 
 Id.
 
 at 686. The attorney in
 
 Biggar
 
 pointed out that Bankruptcy Rules 2016 and 2017, which require the attorney to disclose fee arrangements and allow the court to review whether any payment was excessive, recognize that post-petition payments may be made to the debtor’s attorney. The attorney argued that this recognition of post-petition payments supported a finding that the fee obligation was exempt from discharge.
 
 Id.
 
 at 687. We disagreed. We noted that 11 U.S.C. § 727 generally discharges all debts unless the debt is included in the exceptions to discharge specified in 11 U.S.C. § 523, and that “[njowhere in § 523 is there a provision that excepts debts for attorneys’ fees incurred in preparing bankruptcy petitions.”
 
 Id.
 
 The discharge provisions did not conflict with the recognition of post-petition payments under Bankruptcy Rules 2016 and 2017 because those disclosure provisions also applied to Chapter 11 and Chapter 13 cases.
 
 Id.
 
 at 688. We therefore held that “[a] plain reading of the discharge provisions is that there is no exception for debts arising from pre-petition attorneys’ fees.”
 
 Id.
 
 We recognized that this holding might make it difficult for debtors to get assistance from an attorney prior to filing their bankruptcy petitions, but stated that it was up to Congress, rather than this court, to make exceptions to the discharge provisions of § 727.
 
 Id.
 

 The only significant difference between
 
 Biggar
 
 and this case is that the debtor here paid the filing fee for the bankruptcy petition in installments as authorized by Rule 1006(b). Rule 1006(b)(3), entitled “Postponement of attorney’s fees,” states that in bankruptcies filed pursuant to Rule 1006(b) the “fifing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case.” ALC claims that we must read this language as explicitly or implicitly allowing attorneys to collect post-petition the fees that they have earned for services rendered pre-petition. We disagree.
 

 Rule 1006(b)(3) states only that if a debtor is to pay fees to an attorney, the fifing fee must be paid before any attorneys’ fees may be paid. The language does not indicate that fees for pre-petition services are appropriate, let alone that an obligation to pay such fees must be exempt from automatic stay and discharge. Even if such an exemption were an arguable implication of the rule’s language, a Bankruptcy Rule cannot create an exception to the Bankruptcy Code. The Supreme Court is authorized under 28 U.S.C. § 2075 to prescribe rules of bankruptcy procedure, but the rulemaking power under § 2075 is limited in the same way as the rulemaking power under the Rules Enabling Act, § 2072(b).
 
 See, e.g., Hanna v. Plumer,
 
 380 U.S. 460, 463-66, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Both sections provide, “Such rules shall not abridge, enlarge, or modify any substantive right.” We have interpreted § 2075 to mean that “any conflict between the Bankruptcy Code and the
 
 *442
 
 Bankruptcy Rules must be settled in favor of the Code.”
 
 United States v. Towers (In re Pacific Atlantic Trading Co.),
 
 33 F.3d 1064, 1066 (9th Cir.1994). Accordingly, we hold that in a Chapter 7 bankruptcy filed pursuant to Rule 1006(b), an obligation for pre-petition legal services is subject to automatic stay and discharge.
 

 ALC also argues that Rule 1006(b) creates a condition precedent to the creation of an enforceable right to payment. ALC argues that because under Rule 1006(b) it could not collect any attorneys’ fees until after the filing fee was paid in full, it had no right to payment on the attorneys’ fees until that time. Thus, according to ALC, the obligation was not a “claim” under the Bankruptcy Code until after payment of the filing fee. For support of the “right to payment” theory, ALC cites
 
 Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co., Inc.),
 
 744 F.2d 332, 336 (3d Cir.1984), which held that whether a claim is subject to stay depends on when the “right to payment” on that claim arose.
 

 We are not persuaded by ALC’s argument. First, the definition of “claim” in bankruptcy is exceedingly broad. A “claim” is “a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. ...” 11 U.S.C. § 101(5). When we held in
 
 Biggar
 
 that an obligation to pay attorneys’ fees was a dischargeable debt, we implicitly held that such an obligation was a claim against the debtor’s estate, because a debt is a “liability on a claim.” 11 U.S.C. § 101(12).
 
 See also Pennsylvania Public Welfare Dept. v. Davenport,
 
 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (“This definition reveals Congress’ intent that the meanings of ‘debt’ and ‘claim’ be coextensive.”).
 

 Second, we have criticized Frenville’s “right to payment” theory:
 

 To hold that a claim ... arises only when there is an enforceable right to payment appears to ignore the breadth of the statutory definition of claim.... [This] definition of claim is designed to ensure that all legal obligations of the debtor,
 
 no matter how remote or contingent,
 
 will be able to be dealt with in the bankruptcy case.
 

 The breadth of the definition of “claim” is critical in effectuating the bankruptcy code’s policy of giving the debtor a “fresh start.”
 

 California Dept. of Health Serv. v. Jensen (In re Jensen),
 
 995 F.2d 925, 929-30 (9th Cir.1993) (citations and quotations omitted) (emphasis in original). As noted by the bankruptcy court in this case, if we follow the “right of payment” approach, creditors could circumvent the broad definition of “claim” in the Bankruptcy Code by creating obligations to pay that are triggered only by the discharge in bankruptcy.
 
 See In re Jastrem,
 
 224 B.R. 125, 129 (Bankr.E.D.Cal.1998). This would not only undermine the Bankruptcy Code’s attempt to give the debtor a fresh start, but would also conflict with 11 U.S.C. § 524, which prevents a debtor from waiving his or her right to discharge in bankruptcy.
 

 Ill
 

 ALC also challenges the bankruptcy court’s decision to reduce its attorneys’ fees from $1,000.00, the amount specified in its contract with Jastrem, to $750.00. ‘We will not disturb a bankruptcy court’s award of attorneys’ fees unless the bankruptcy court abused its discretion or erroneously applied the law.”
 
 Kord Enter. II v. California Commerce Bank (In re Kord Enter. II),
 
 139 F.3d 684, 686 (9th Cir.1998).
 

 
 *443
 
 The bankruptcy court had authority under 11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure 2017(b) to order ALC to return to Jastrem any attorneys’ fees that exceeded the reasonable value of the services provided. Section 330 sets out the standard by which courts should determine the reasonableness of fees under § 329.
 
 See In re Geraci,
 
 138 F.3d 314, 318 (7th Cir.1998);
 
 Hale v. United States Trustee (In re Basham),
 
 208 B.R. 926, 931 (9th Cir. BAP 1997); 3 Lawrence P. King,
 
 Collier on Bankruptcy
 
 ¶ 329.04[1][c], at 329-19 (15th ed. rev. 2001). Section 330(a)(3) states that in determining the amount of reasonable compensation, the court should consider the nature, extent, and value of the services rendered, taking account of all relevant factors, including the time spent on the services, the rates charged for the services, and the customary compensation of comparably skilled attorneys in other cases. The bankruptcy court in this case followed this approach. The court analyzed the work that ALC performed and took into account the standard rates for bankruptcy representation in the area. The court found that Jastrem’s petition was simple and straightforward and that ALC’s “minimal” work did not involve “any factual or legal complexity.” The only complication in the representation was a wage garnishment, a problem that took ALC less than one hour to resolve. In addition, ALC failed to provide evidence, such as contemporaneous time records, supporting its claim for fees. We hold that the bankruptcy court’s reduction of ALC’s attorneys’ fees was not an abuse of discretion.
 

 AFFIRMED.