**In re Mayme E. McNICKLE, Debtor.**

**No. 00–54067.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 20, 2002.

478

William P. Bringman, Fredericktown, OH, for debtor.

Eleanor Beavers Haynes, Columbus, OH, Chapter 7 Trustee.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law regarding the Motion for Sanctions filed on behalf of Mayme E. McNickle ("Debtor") and the Memorandum Contra filed by William Paul Bringman ("Creditor"). The Creditor served as bankruptcy counsel for the Debtor, and subsequent to the discharge he sued the Debtor to collect outstanding legal fees in the Mount Vernon, Ohio, Municipal Court. The Debtor seeks sanctions against the Creditor, and asserts that the collection action constitutes a violation of the discharge injunction and automatic stay, pursuant to sections 524(a)(2) and 362(a)(1) and (6) of the United States Bankruptcy Code ("Code").[1] The Debtor also seeks the disallowance of all compensation on the bases that the Creditor failed to adequately disclose the nature of the fee arrangement, and that the charges for the bankruptcy services are unreasonable. 11 U.S.C. § 329.[2]

Based upon the testimony and documents received into evidence, the Court has concluded that to the extent the collection action seeks to recover pre-petition fees, it constitutes a violation of the dis-

---

1. Section 524(a)(2) of the Code provides in relevant part as follows:

> A discharge in a case under this title—
> . . .
> (2) *operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt* . . . (emphasis supplied)

Section 362(a)(1) and (6) of the Code provide in relevant part as follows:

> Except as provided in subsection (b) of this section, a petition filed under . . . this title, . . . operates as a stay, . . . of—
> (1) *the commencement or continuation,* including the issuance or employment of process, *of a judicial, administrative, or other action or proceeding against the debtor* . . .
> (6) *any act to collect,* assess, or recover a claim *against the debtor that arose before the commencement of the case* . . . . (emphasis supplied)

2. Section 329 of the Code provides in relevant part as follows:

> (a) *Any attorney representing a debtor in a case under this title,* or in connection with such a case, whether or not such attorney applies for compensation under this title, *shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney,* and the source of such compensation.
> (b) *If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment,* . . . (emphasis supplied)

charge injunction and the automatic stay. The Creditor should be assessed actual damages, including legal fees and costs for this violation. Based upon the egregious nature of the commencement and continuation of the collection suit, punitive damages in the amount of $1,000.00 are also assessed. In addition, the Court has concluded that while disallowance of post-petition fees and expenses is not appropriate on the basis that the charges are unreasonable, disallowance is warranted due to the inadequacy of the fee disclosure filed with the Court. A brief history of the facts follows.

The Debtor received a subpoena for a judgment debtor examination, and this prompted her to call the Creditor for legal assistance on January 3, 2000. They met the next day for about thirty minutes. During this meeting, the examination was discussed, and ultimately a fee agreement ("Agreement") was executed. Shortly before the examination, a $500.00 retainer was paid. The Agreement refers generally to "debt problems" and specifies that work is to be performed at specific hourly rates. Subsequently, the Debtor and Creditor attended the examination on January 12, 2000, and at the conclusion they agreed that a bankruptcy filing would be in the Debtor's best interest. Prior to filing, however, there appears to have been a significant discussion regarding the appropriate chapter. The concern was the amount of equity the Debtor had in her home and the possibility that it would be administered by a chapter 7 trustee. A chapter 13 filing was considered problematic in view of the Debtor's modest income.

The record indicates that over a series of meetings and telephonic discussions, it was learned that the Debtor's home was subject to a mechanic's lien held by her son related to its construction. Apparently, it was the existence of this lien and its presumed validity that ultimately persuaded the Debtor and Creditor to pursue the instant chapter 7 proceeding filed on May 9, 2000. Along with the Petition, Schedules and Statement of Affairs, the requisite Compensation Statement was filed, and it merely refers to an attached copy of the previously executed Agreement. FRBP 2016(b).[3] There is no disclosure of what the bankruptcy charges will be, the amount of any retainer, and any balance due. At the time of the bankruptcy filing, the Creditor claims he was owed the sum of $807.35 for pre-petition services and expenses. This balance due reflected the payment of the $500.00 retainer and the sum of $35.77 subsequently paid by the Debtor. Indeed, the Creditor advanced the sum of $200.00 to defray the bankruptcy filing fee costs on behalf of the Debtor. None of this information is detailed in the Compensation Statement.

Subsequent to the filing, the Debtor and Creditor attended the creditors' meeting conducted on June 15, 2000. The record indicates that the chapter 7 trustee considered the mechanic's lien issues and the possible administration of the home. These efforts were abandoned, however, on February 15, 2001, when the Trustee filed a No Asset Report, and on March 6, 2001, the Debtor was granted a discharge. Approximately two months later, the Creditor commenced a collection action in the Mount Vernon, Ohio, Municipal Court to

---

**3.** FRBP 2016(b) provides in relevant part as follows:

Every attorney for a debtor, ... shall file and transmit to the United States Trustee within 15 days after the order for relief, ...

the statement required by § 329 of the Code ... A supplemental statement shall be filed and transmitted to the United States Trustee within 15 days after any payment or agreement not previously disclosed.

collect outstanding legal fees and expenses in the amount of $1,437.30, plus interest from the last billing (March 28, 2001). This action prompted the Debtor's retention of new counsel, who wrote a letter to the Creditor seeking the dismissal of the lawsuit on the basis that the legal fees were discharged. When this effort proved ineffective, this chapter 7 proceeding was reopened on July 23, 2001. On July 27, 2001, the instant Motion for Sanctions was filed, and the Creditor filed a Memorandum Contra on August 14, 2001. Subsequent to the hearing, the parties filed memoranda in support of their positions.

■ Regarding the collection action, the majority rule, that strictly construes the Bankruptcy Code, holds that pre-petition legal services are subject to the discharge, and subsequent collection efforts violate the automatic stay and the discharge injunction.[4] On the other hand, post-petition services are not discharged on the theory that in *quantum meruit*, attorneys are entitled to reasonable compensation for legal services.[5] The Court is persuaded that the majority rule should prevail.

■ In the instant case, it is concluded that the pre-petition fees were subject to the discharge and the filing of the collection lawsuit violated the automatic stay and the discharge injunction. For this breach, the Debtor is entitled to actual damages, including legal fees and expenses. Also, the Court will award puni-

tive damages in the amount of $1,000.00. This award is based on the fact that even after receiving a warning from the Debtor's current attorney to cease collection efforts, the lawsuit continued and prompted the unnecessary time and expense of reopening this case and the commencement of the instant litigation. At a minimum, such a warning should have prompted the Creditor to seek some clarification from this Court before proceeding any further.

■ Turning to the issue of the post-petition compensation that is not subject to the discharge, the Court has reviewed the Compensation Statement filed with the Court, the attached Agreement, and has considered the invoices supporting the charges. The Court cannot find that the charges for the post-petition services are unreasonable as contemplated by section 329(b) of the Code. Indeed, it appears that the mechanic's lien issues presented complexities that even prompted the case trustee to consider the administration of this case. The Court does conclude, however, that post-petition compensation should be disallowed on the basis of the inadequacy of the disclosure.

■ Typically in this jurisdiction, chapter 7 debtors are charged a flat fee for bankruptcy services. A separate hourly rate is negotiated if legal issues arise post-petition, such as the commencement of dischargeability proceedings. In the instant

---

4. *In re Biggar*, 110 F.3d 685, 687–688 (9th Cir.1997); *In re Heuring*, 139 B.R. 856, 857–858 (Bankr.N.D.Ohio 1992); *In re Nieves*, 246 B.R. 866, 872–873 (Bankr.E.D.Wis.2000); *In re Meis–Nachtrab*, 190 B.R. 302, 305–308 (Bankr.N.D.Ohio 1995). *Contra, In re Mills*, 170 B.R. 404, 410–413 (Bankr.D.Ariz.1994); *In re Perry*, 225 B.R. 497, 500–501 (Bankr. D.Colo.1998); *see generally*, Joshua D. Morse, *Public Policy Is Never A Substitute for Statutory Clarity: Rejecting the Notion that Pre–Petition Attorney–Fee Debts Are Nondischargeable*

*in Chapter 7 Bankruptcies*, 40 Santa Clara L.Rev. 575 (2000) (author is critical of decisions holding that pre-petition fees are not subject to the discharge and characterizes them as judicial legislation).

5. *In re Hines*, 147 F.3d 1185, 1191 (9th Cir. 1998); *In re Jastrem*, 224 B.R. 125, 130 (Bankr.E.D.Ca.1998), *aff'd* 253 F.3d 438 (9th Cir.2001).

case, rather than executing a new fee agreement with the Debtor, the Agreement entered into pre-petition was merely attached to the Compensation Statement, without any disclosure of the amount of compensation specifically related to the bankruptcy filing that was agreed to be paid, the amount paid, and any balance. The Court fully understands how the Debtor would be confused about what the bankruptcy would cost, and it appears to the Court that the charges theoretically could be limitless. The purpose of the compensation disclosure requirement is to enable the Court and the U.S. Trustee to monitor and examine the bankruptcy filing compensation paid by debtors to protect them from overreaching and to make sure assets are not shielded from creditors.[6] Based upon the inadequacy of the disclosure of the charges specific to the instant bankruptcy filing, the Court has determined that the post-petition fees should be disallowed.

Within thirty days from entry of this Memorandum Opinion and Order, counsel for the Debtor shall file and serve a statement of actual damages, including legal fees and expenses. Subsequently, a separate judgment will be entered.

**IT IS SO ORDERED.**

---

6. *In re Symes,* 174 B.R. 114, 116–117 (Bankr. D.Ariz.1994); *In re Martin,* 197 B.R. 120, 124–126 (Bankr.D.Colo.1996); *In re Zepecki,* 277 F.3d 1041 (8th Cir.2002).