# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1303

ALBERT BETHEA, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ROBERT J. ADAMS & ASSOCIATES; LAW OFFICES
OF MELVIN JAMES KAPLAN; and ZALUTSKY &
PINSKI, LTD.,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 3557—**James B. Zagel**, *Judge*.

_____

ARGUED SEPTEMBER 9, 2003—DECIDED DECEMBER 17, 2003

_____

Before CUDAHY, EASTERBROOK, and RIPPLE, *Circuit
Judges*.

EASTERBROOK, *Circuit Judge*.   Three debtors in bank-
ruptcy hired lawyers before filing their petitions. Each
agreed to a retainer that would cover the legal services
entailed in preparing and prosecuting the proceedings.
Unlike most retainers, however, these were to be paid over
time—some installments before the petition was filed,
others thereafter. The lawyers performed as promised: all
three debtors received their discharges, and the cases were
closed. When the lawyers continued to collect the unpaid
installments, the three debtors (with the assistance of new

counsel) commenced adversary proceedings in which they asked the bankruptcy court to hold their former lawyers in contempt for violating the injunctions implementing the discharges. See 11 U.S.C. §524.

Bankruptcy Judge Barliant concluded that attorneys' fees "reasonable" under 11 U.S.C. §329(b) are not discharged. 275 B.R. 284 (Bankr. N.D. Ill. 2002). Section 329, which deals directly with attorneys' compensation, supersedes the more general reach of 11 U.S.C. §727, the discharge provision, the judge held, reasoning that any other conclusion would leave no work for §329(b) to do. Because statutes should not be read to make any section ineffectual, the bankruptcy court thought that §329(b) must be the only device for controlling debtors' legal fees. The debtors concede that the fees they had promised to pay their ex-attorneys are reasonable, so Judge Barliant dismissed the adversary proceedings. The district judge affirmed, substantially for the bankruptcy judge's reasons. 287 B.R. 906 (N.D. Ill. 2003).

Section 727(b) reads: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title." Attorneys' fees are not among the debts excepted from discharge by §523. The retainer is a pre-petition, liquidated debt; but even if it were an unliquidated "claim" for purposes of §502, that claim also would be covered. Unless §329 creates an unenumerated exception to §727(b), the debts to these attorneys were discharged.

Section 329(a) requires every attorney representing a debtor in bankruptcy to file with the court a statement of all compensation received during the preceding year, or to be received, in connection with the bankruptcy. This statement enables the court to determine whether the lawyer has received a preferential transfer. Debtors may not care who gets what money remains (if the attorney gets more, other creditors get less), and, when clients do not haggle over price, some attorneys will be tempted to divert the funds to themselves by charging excessive fees. Section 329(b) requires bankruptcy judges to use the information supplied under §329(a) to determine whether "such compensation exceeds the reasonable value of any such services". If it does, then "the court may cancel any such agreement, or order the return of any such payment, to the extent excessive". The bankruptcy and district judges believed that this power is exclusive of discharge under §727; otherwise, they stated, §329(b) would play no role in Chapter 7 cases even though 11 U.S.C. §103(a) declares that it (like the rest of Chapter 3) applies to Chapter 7 proceedings.

Our difficulty with this approach is that §329 has *plenty* to do in Chapter 7 cases, even if debts for legal fees are subject to discharge. First, prepaid fees exceeding the "reasonable" value of the legal services must be recouped for the benefit of other creditors. Second, the judge must ensure the reasonableness of any fees incurred during the proceeding itself, once more to protect other creditors. Third, if the debt is reaffirmed during the proceeding, yet again the judge must ensure reasonableness. Finally, if the debtor repudiates the executory portion of the agreement with counsel, and the estate rehires the same lawyer (an approach that gives administrative priority to ongoing legal fees), once again §329(b) requires the judge to review the fee agreement for reasonableness. Because grouping legal fees with other debts subject to discharge does not gut

§329(b) for Chapter 7 cases, the structure of the Bankruptcy Code does not support treating §329 as an implicit exception to §727. We therefore agree with *In re Biggar*, 110 F.3d 685 (9th Cir. 1997), that pre-petition debts for legal fees are subject to discharge under §727. See also *In re Sanchez*, 241 F.3d 1148, 1150 (9th Cir. 2001). Although *Biggar* is the only appellate decision squarely in point, almost every bankruptcy judge and district judge who has considered the question has come to the same conclusion—essentially everyone other than the judges in this litigation.

The three lawyers contend that reading §727 this way would force the most destitute of debtors to forego legal assistance, because counsel neither could be paid in advance (the norm for Chapter 7 cases) nor could collect after the case ends. The bar therefore would shun these debtors, depriving them of the Code's benefits. That argument about what makes for good public policy should be directed to Congress; the judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior. See *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 460-62 (2002). Cf. *United States v. Kras*, 409 U.S. 434 (1973) (filing fee that makes it possible to be "too poor to go bankrupt" must be implemented). For what it may be worth, however, we do not share the view that taking §727(b) at face value necessarily injures deserving debtors. Those who cannot prepay in full can tender a smaller retainer for prepetition work and later hire and pay counsel once the proceeding begins—for a lawyer's aid is helpful in prosecuting the case as well as in filing it. Legal fees incurred after filing in such situations receive administrative priority; that prospect (plus some pre-filing retainer) should be enough to summon legal assistance. And debtors retain the ability to represent themselves, when legal aid cannot be found.

Bankruptcy Judge Barliant considered whether an intermediate position is possible, under which the portion of the

retainer reflecting work done *during* the bankruptcy is immune from discharge, even if the portion of the retainer reflecting pre-filing work is discharged. *In re Hines*, 147 F.3d 1185 (9th Cir. 1998), adopted that position, limiting *Biggar* to fees for pre-filing work. The *Hines* majority wrote that it thought the Code as written (and as implemented in *Biggar*) is unsatisfactory as a matter of public policy, and it decided to do a little surgery under what it called a "doctrine of necessity." See 147 F.3d at 1190-91. Like Judge Barliant, who concluded that *Hines* is wrongly decided, we do not conceive revision of the Code as a proper part of the judicial job. The Bankruptcy Code is a complex compromise among debtors and different kinds of creditors; tilting it to help one of these interests is unwarranted. Attorneys compete with other creditors, such as banks, credit card issuers, supermarkets, auto dealers, colleges, spouses, and children; some of these have obtained protection under §523 and others have not. Judges are not entitled to override the legislative approach with a lawyer-centric public policy that puts members of their own social class higher in the priority list at the expense of other creditors, or of the debtors themselves.

Thus even though the debtors in this appeal have expressed willingness to accept the conclusion of *Hines*, we must determine whether that is a legally open middle ground. (Even when a litigant confesses error on a district court's conclusion, as these litigants effectively have done with respect to Judge Barliant's treatment of *Hines*, an appellate court must decide the issue independently. See *Lawrence v. Chater*, 516 U.S. 163, 170-71 (1996); *Rinaldi v. United States*, 434 U.S 22 (1977). Failure to do so might lead to a remand with instructions to proceed in an unlawful manner.) Deciding whether to follow *Hines* is essential to the resolution of the appeal. Because both the bankruptcy judge and the district judge concluded that

attorneys' fees are never discharged, the sums owed under the retainer have never been partitioned between pre- and post-filing work. We must either reverse outright (holding that the distinction is not legally material) or remand for apportionment; there is no way to duck.

*Hines* conceded that it was going against the Code's language. What is discharged is a claim to payment. One contract (the retainer) gives rise to one claim, meaning a "right to payment, whether or not such right is . . . fixed, contingent, matured [or] unmatured". 11 U.S.C. §101(5). See *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990). *Hines* shattered each retained agreement into multiple claims by holding that a "claim" does not accrue until the legal services are performed. Each month (potentially each day or hour) that the lawyer performs services for the estate then becomes a separate claim. That contradicts both the Code and the retainer agreement, which says that the fee is due whether or not the client uses the services. (That's the difference between a retainer and an hourly fee. Judge Tashima's concurrence in *Hines*, 147 F.3d at 1192-93, which rejected the majority's legislative approach but accepted the outcome, depends on dividing the retainer into hourly units— a step that avoids rewriting the Code by rewriting the contract instead.)

What is more, even the transformation of one retainer into many claims (using either the approach of the *Hines* majority or that of Judge Tashima) is not enough to support that decision's *holding*, which is that fees for postpetition work are not discharged. The most a court could do is give administrative priority to post-petition fees for work in the action's prosecution. Yet if the debtor's estate is insufficient to pay administrative claims, even those are discharged. Nothing in the Code permits a categorical exception for any kind of debt other than one listed in §523—and legal fees

are not on that list. Because this opinion creates a conflict with the ninth circuit's holding in *Hines* (though it follows the ninth circuit's original holding in *Biggar*), it was circulated before release to all active judges. See Circuit Rule 40(e). No judge favored a hearing en banc.

Counsel must repay the debtors any sums collected after the discharges were entered. If any sums were collected on account of the retainers during the bankruptcies in violation of the automatic stay, see 11 U.S.C. §362, these too must be refunded to the estates. Whether additional steps may be warranted is a question for the bankruptcy and district judges to consider in the first instance, and the cases are remanded for that purpose.

VACATED AND REMANDED.

CUDAHY, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the majority that the painstaking procedure provided in § 329 of the Bankruptcy Code to conform lawyers' charges to reasonable levels is not in "conflict" with the discharge provisions of §§ 727 and 524 or the automatic stay provision of § 362. The relationship of these sections may be awkward, and this awkwardness raises some questions about Congress's understanding and intent with respect to the discharge of attorneys' fees. It does seem implausible that Congress provided a procedure in § 329 to impose reasonableness on attorneys' fees only to simultaneously decree them discharged under § 727. But, as the

majority holds, there is no conflict clear enough to defeat discharge, when attorneys' charges are not among the items specifically excepted from discharge by § 523. This conclusion knocks the props out from the main argument made by the courts below to justify an exception from discharge.

There are, however, other incongruities in the application of the Code that lead one to wonder whether Congress really did anticipate that attorneys' fee claims would be discharged. For example, Bankruptcy Rule 1006, implementing 28 U.S.C. § 1930, provides for payment of bankruptcy filing fees in installments within 120 days after the filing of a bankruptcy petition, but Rule 1006(b)(3) prohibits any payment to the debtor's attorney before the filing fee is paid in full. *See* Fed. R. Bankr. P. 1006(b)(3). Rule 1006 codifies the longstanding practice under the former Bankruptcy Act and rules. *See, e.g.*, *In re Latham*, 271 F. 538 (N.D.N.Y. 1921). Thus, the rules at least implicitly recognize that attorneys representing debtors in connection with their bankruptcies may be paid, and may agree to be paid, post-petition. Although the Bankruptcy Rules may not contradict substantive provisions of the Code, rules propounded by the Supreme Court are presumed not to do so. *See In re Moralez*, 618 F.2d 76, 78 (9th Cir. 1980) (resolving doubt about prior substantive law in favor of the understanding expressed by the rule); *Matter of Decker*, 595 F.2d 185, 189 (3d Cir. 1979) ("strong presumption" in favor of consistency of rules with Code); *but see In re Jastrem*, 253 F.3d 438, 441-42 (9th Cir. 2001) (resolving inconsistency in favor of Bankruptcy Code and discharging pre-petition fees).

There is also evidence in the history of § 60(d) of the Bankruptcy Act of 1898, as amended (the predecessor of § 329 of the Code), that Congress did not intend that pre-petition attorneys' fees be discharged. The Supreme Court characterized § 60(d) as "recogniz[ing] the right of . . . a

debtor to have the aid and advice of counsel, and, in con-templation of bankruptcy proceedings which shall strip him of his property, to make provisions for reasonable compen-sation to his counsel." *In re Wood*, 210 U.S. 246, 253 (1908); *see also In re Falk*, 30 F.2d 607, 609 (2d Cir. 1929) ("The object of § 60(d) was to afford the bankrupt representation by counsel, who would not have to take his chances as a general creditor, but might know that a reasonable fee was assured . . . ."). I do not see this, as the majority suggests, as a species of "social-class preference." It seems to me an arrangement that might enable debtors to obtain counsel in bankruptcy when counsel might be sorely needed. The elementary demands of fairness are offended when a necessitous debtor retains a lawyer to help him unburden himself of his debts and then hoists the unsuspecting attorney on his own petard by not only refusing to pay what is due under the retainer but asking that the lawyer be held in contempt.

Bankruptcy Judge Barliant began his opinion in this case with a plea for an appropriate regard for context in the construction of statutes. In that respect, he quoted from our decision in *In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1128 (7th Cir. 1998) (Posner, C.J.), "when context is disregarded, silliness results." So in taking account of the context here, there may be some grounds for viewing the discharge of pre-petition attorneys' fees as "silly," but that is a description we must lay at the feet of Congress, which, I think dispositively, failed to include pre-petition lawyers' fees as an exception to discharge.

I do not, however, agree with the majority that there is anything in the case before us that requires the rejection of *In re Hines*, 147 F.3d 1185 (9th Cir. 1998) (Shadur, J.), and thereby the creation of a split with the Ninth Circuit. In this appeal, the debtors claim only that "Defendants violated the automatic stay . . . and the discharge injunction . . . of the Bankruptcy Code by collecting debts from Plain-

tiffs for *attorneys' fees earned pre-petition* after Plaintiffs' bankruptcy petitions were filed." Appellants' Br. at 3 (emphasis added). The status of payments for post-petition services is not in issue on this appeal, and the majority seems to agree that the parties have not raised this issue here. Under ordinary principles of the adversary system, we do not reach out to decide questions not before us. *See, e.g.*, Adam A. Milani & Michael R. Smith, "Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts," 69 Tenn. L. Rev. 245, 273 (2002) ("Party identification of the issues is at the core of th[e adversary] system and '[t]he adversary process is no more starkly challenged than when a court decides an issue not raised, for it actually decides something other than what the parties asked it to decide.'") (footnotes and citations omitted). The fact that, in passing, Judge Barliant disagreed with the Ninth Circuit's analysis in *Hines* in support of his refusal to jump on the *Biggar* bandwagon is certainly not a sufficient reason for us to address an issue that is unnecessary to our disposition of this appeal. After all, the bankruptcy judge was rejecting *Hines*'s reaffirmation of *Biggar*'s discharge of *pre-petition* fees, not its non-discharge of *post-petition* fees. Moreover, neither party has "confessed error," either explicitly or otherwise, as to Judge Barliant's analysis of *Hines*, because the outcome has not (until now) hinged on *Hines*'s validity. The majority argues that because it might be appropriate to remand for apportionment, we must instruct the lower courts on how to do that or they may "proceed in an un-lawful manner." Slip op. at 5. But we have decided only the disposition of pre-petition fees—the only issue pre-sented on this appeal. What sort of issues may arise on remand and how the parties will frame them is presently unknown, and it is premature to instruct anyone how to deal with an unlitigated issue. The question before us is what issues are raised by the litigants, not, as in *Lawrence v. Chater* (cited by the majority), whether a lower court would change its opinion in light of a significant change in

circumstances, such as a confession of error by one of the parties to the litigation or a failure to consider an important precedent, if given the opportunity to do so on remand.[1] *See Lawrence v. Chater*, 516 U.S. 163, 167-68 (1996).

The issue that the majority seeks to decide prematurely is whether fees for work performed after the filing of the petition are to be discharged, not whether the particular rationales provided by the *Hines* majority or by Judge Tashima's special concurrence are valid. The underlying principle is that only debts *owed at the time of filing the petition* are subject to discharge under Section 727. *See* 11 U.S.C. § 301 (the commencement of a voluntary case under Chapter 7 by filing a petition constitutes an order for relief); 11 U.S.C. § 727(b) (operating to discharge "all debts that arose before the date of the order for relief"). As the majority recognizes, fees arising from professional services rendered during bankruptcy are treated entirely differently by the Code. *See* slip op. at 4. Nonetheless, the majority seems to be saying that because it might be difficult to allocate fees between pre-petition and post-petition work, both must be discharged. These concerns about problems of allocation are, as I have indicated, also premature. Whether the bankruptcy lawyers' fees for post-petition legal services

---

[1] In fact, the majority is arguing not that a simple vacatur and remand is appropriate in this case as it was in *Lawrence v. Chater*, but that the parties (despite all indications to the contrary) have actually appealed the validity of *Hines* with respect to the discharge of post-petition fees, and that we must therefore pass judgment on that issue. Moreover, what the majority characterizes as an "effective" "confess[ion of] error" by the litigants is, if anything, merely argumentation on appeal that the *lower court* (not the parties themselves) has made an error of law. *Lawrence v. Chater* is thus inapposite, and neither it nor *Rinaldi v. United States*, 434 U.S. 22 (1977) (also cited by the majority), requires this court to "decide the issue independently." Slip op. at 5.

are dischargeable is an issue that may be raised and dealt with on remand in the bankruptcy court, and, as I have pointed out, we have no idea what positions will be taken by the parties with respect to that issue or what rationales they will advance in support of their positions (or whether they will settle the case without further litigation).[2] The validity of *Hines* may become an issue at that time, although that is by no means certain, and there will then be a record upon which to evaluate the holding of that opinion. The issue whether all lawyers' fees in the course of a bankruptcy will be discharged, or only the fees incurred prior to filing the petition, is much too important to decide before it is litigated.

Although, as I have argued, the validity of the Ninth Circuit's holding in *Hines* should not be reached at this time, it should be borne in mind that *Hines*—incidentally, an opinion authored by an able jurist from the Seventh Circuit, sitting by designation—is not only the law of the Ninth Circuit, *see In re Sanchez*, 241 F.3d 1148, 1150 (9th Cir. 2001), but has been followed elsewhere, *see, e.g.*, *In re McNickle*, 274 B.R. 477, 480 n.5 (S.D. Ohio 2002).[3] And the

---

[2] It should be kept in mind that the debtors have argued vociferously that "legal fees only become a 'claim' as the legal services are performed," Appellants' Br. at 14, and would be judicially estopped from arguing the opposite on remand if the majority did not insist on prematurely invalidating the holding of *Hines*. And the bankruptcy lawyers have argued *Hines* is wrong only in that it discharges pre-petition fees; they have obviously never argued that post-petition fees should also be discharged. *See* Appellee's Br. at 17-18.

[3] Even though the majority disparages the idea of dividing a retainer agreement into multiple "claims" accruing when legal services are performed, "Illinois law entitles a client to discharge his lawyer (without liability) at any time, with or without cause."

(continued...)

principle that fees applicable to post-petition activities are not discharged, even if based on a pre-petition contract, has been broadly recognized. *See, e.g., Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 532 (9th Cir. 1998); *In re Sure-Snap Corp.*, 983 F.2d 1015, 1018 (11th Cir. 1993);

---

[3] (...continued)
*Maksym v. Loesch*, 937 F.2d 1237, 1245 (7th Cir. 1991), citing *Rhoades v. Norfolk & Western Ry.*, 399 N.E.2d 969, 974 (Ill. 1979). (For the record, the Illinois Supreme Court followed California's lead in deciding this issue. *See Fracasse v. Brent*, 494 P.2d 9 (Cal. 1972) (allowing attorney discharged with or without cause to receive a reasonable fee for services rendered). Judge Tashima's rationale for allowing post-petition fees therefore does not actually involve "rewriting the contract" at all, because, just as in Illinois, California law does not create a right to payment until services have been performed.) Thus, particularly in this case, there is no support for the majority's argument that bifurcating an agreement for legal fees in the way advocated in *Hines* "contradicts both the Code and the retainer agreement, which says that the fee is due whether or not the client uses the services." Slip op. at 6. For this reason, it is also arguable whether installment fee agreements entered into by Illinois bankruptcy lawyers would actually give rise to any "right to payment" until they have performed the agreed-upon legal services.

Rather, both Illinois law governing lawyer-client fee agreements and the Code support *Hines*'s holding that post-petition fees are not discharged. Under Illinois law, a bankruptcy lawyer is entitled to the value of services rendered under a theory of *quantum meruit*. This is entirely in keeping with § 329(b) of the Code, which requires bankruptcy courts to make exactly that determination. Although the majority's holding today is arguably correct in finding that the Bankruptcy Code trumps the law of restitution in denying a reasonable fee for *pre-petition* services rendered by "lawyers . . . in circumstances in which they can reasonably be expected to be compensated," *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998), neither the Code nor Illinois contract law supports the majority's gratuitous determination that these lawyers are not entitled to their post-petition fees.

*In re Hadden*, 57 B.R. 187 (Bankr. W.D. Wis. 1986). But, more immediately relevant, the status of *Hines* in this circuit is an issue we may not properly reach in this appeal, and I see no merit to doing so. As Judge Easterbrook observed in another bankruptcy case, "[w]e do not create conflicts among the circuits without strong cause. A conflict here would be gratuitous." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 675 (7th Cir. 1995).

I therefore respectfully dissent to the extent I have indicated.


A true Copy:

　　　　Teste:


　　　　　　　　　　_____
　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　*Appeals for the Seventh Circuit*