**In re Brandi L. SPONHOUSE and Robert V. Sponhouse, Debtors.**

**No. 12–10930–MKN.**

United States Bankruptcy Court, D. Nevada.

Aug. 27, 2012.

Peter C. Nuttall, Second Chance Law Group, Las Vegas, NV, for Debtors.

**ORDER ON ORDER TO SHOW CAUSE WHY ATTORNEY PETER C. NUT-TALL SHOULD NOT BE SANC-**

**TIONED**[1]

MIKE K. NAKAGAWA, Bankruptcy Judge.

On August 1, 2012, the Order to Show Cause Why Attorney Peter C. Nuttall Should Not be Sanctioned Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, the Court's Inherent Sanctions Authority Under 11 U.S.C. § 105, or the Local Bankruptcy Rules ("OSC") came on for hearing before the court. After arguments were presented, the matter was taken under submission.

The OSC stems from two chapter 7 bankruptcy petitions filed by attorney Peter C. Nuttall ("Nuttall") on behalf of Brandi L. Sponhouse ("Brandi") and Robert V. Sponhouse ("Robert," jointly, "Debtors"). The first case was filed on October 21, 2011 ("First Chapter 7 Case"),[2] and Brian Shapiro was appointed as the Chapter 7 trustee ("Trustee"). Pursuant to a motion to dismiss filed by the Trustee, the First Chapter 7 Case was dismissed on December 19, 2011 for failure to file schedules and other documents within the requisite period in Section 521(i). These documents were filed on December 16, 2011, outside the 45–day deadline imposed by Section 521(I). The Trustee was discharged and the case was closed on January 10, 2012.

Nuttall filed the second bankruptcy petition just 17 days later on January 27, 2012 ("Second Chapter 7 Case"). He filed various schedules and documents for the Debtors, including an Application for Waiver of the Chapter 7 Filing Fee ("Fee Waiver Application"). (Dkt. # 7).[3] Except for the Fee Waiver Application, the petition and other documents bear the Debtors' electronic signatures. Nuttall also filed a Disclosure of Compensation of Attorney ("Disclosure of Compensation") pursuant to Section 329 and FRBP 2016(b). (Dkt. # 1 at p. 39). The Disclosure of Compensation in both bankruptcy cases provide that the Debtors paid Nuttall $1,500 for legal services in connection with the bankruptcy cases, and included services such as "[r]epresentation of the debtor at the meeting of creditors." (*Id.*). The court entered an order granting the Fee Waiver Application, and thus, the Debtors' filing fees were waived in the second case. (Dkt. # 15).

The Section 341 meeting of creditors ("§ 341 Meeting") in the Second Chapter 7 Case was initially held on February 27, 2012. The Debtors appeared at the meeting, but Nuttall did not. The Trustee referred the Debtors to the Legal Aid Center of Southern Nevada, and continued the meeting to March 26, 2012, so that the Debtors could pursue the referral, seek other bankruptcy counsel, and amend their bankruptcy petition and schedules. When Nuttall and the Debtors failed to appear at the continued meeting, the Trustee continued the meeting to April 23, 2012, and then again to June 4, 2012. Neither Nuttall nor the Debtors appeared at either of the continued meetings.

On April 26, 2012, the Trustee moved to dismiss the bankruptcy case, this time un-

---

1. Unless otherwise specified, all "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532; all "FRBP" references are to the Federal Rules of Bankruptcy Procedure; and all "Local Rules" or "LR" references are to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada.

2. That case was denominated 11–26653–MKN.

3. All references to "Dkt. # " are to the ECF number as assigned on the docket for documents filed electronically through CM/ECF in the Debtors' above referenced bankruptcy case.

der Sections 521(a) and 707(a), based on the Debtors' failure to amend the petition and schedules, and that the § 341 Meeting had been continued several times. (Dkt. # 32). The dismissal motion came on for hearing on June 7, 2012, at which the Trustee solely appeared. According to the Trustee, the Debtors testified at the initial § 341 Meeting for the Second Chapter 7 Case that they had not signed their bankruptcy petition or other documents. The Trustee further stated that he then contacted Nuttall, and Nuttall responded that he did not have any documents with the Debtors' original signatures.[4] The court granted the Trustee's dismissal motion, but advised that the case would remain administratively open for the possibility of sanctions based on the representations made by the Trustee to the court at the hearing.

The court issued the OSC on June 25, 2011. (Dkt. # 40). It directed Nuttall to appear and show cause why he should not be sanctioned under FRBP 9011, Section 105(a) or the Local Bankruptcy Rules for allegedly filing the Debtors' petition, schedules, and other documents without their apparent authorization. Nuttall was further directed to file written response to the OSC on or by July 18, 2012.

Nuttall filed his response on July 18, 2012. (Dkt. # 42, hereafter "Nuttall Resp."). According to Nuttall, he first met with the Debtors at their home on Sunday, October 9, 2011, to discuss filing for bankruptcy. The Debtors paid him $1,500 to file Chapter 7 bankruptcy, with the understanding that the Debtors needed to produce certain documents, certificates, and the filing fees before October 11, which was prior to Nuttall's scheduled vacation on October 13. Apparently, because Nuttall had little to no bankruptcy

experience, he paid an "experienced bankruptcy paralegal" located in his virtual office building $300 to assist to prepare the petition and other documents. He contends that the Debtors did not provide the requisite documents within the time specified, and as such, a skeletal chapter 7 bankruptcy petition was filed on October 21 while he was on vacation. Nuttall maintains that the emergency bankruptcy filing was necessary to stave off an impending foreclosure of the Debtors' home and prevent garnishment of Robert's wages. Due to miscommunication or Brandi's intentional misrepresentation, Nuttall believed that the Debtors had signed the bankruptcy petition.

Nuttall further states that after the filing in the First Chapter 7 Case, he repeatedly requested critical information and documents from the Debtors through November 2011. He contends that he spoke with Brandi on the morning of the initial § 341 meeting in the First Chapter 7 Case, and was informed that Robert could not attend because of work, and Brandi could not attend due to illness. He states that he advised the Trustee of this, was told that he did not have to attend the meeting, and was thus surprised when the case was dismissed.

Nuttall then filed the Second Chapter 7 Case in January 2012, and received an additional $320 from the Debtors to file the "supplemental filing." (Nuttall Resp. at p. 3). He contends that the supplemental filing was necessary because Brandi failed to timely inform him that she would not be able to attend the § 341 Meeting in December 2011. Nuttall contends, however, that after the second petition was filed, the Debtors refused to provide him with documents necessary for him to amend the

---

4. The Trustee also provided that he notified the Office of the United States Trustee, but it was his understanding that the U.S. Trustee would not pursue the matter.

petition or schedules with the Debtors' signatures. According to Nuttall, Brandi called him prior to the initial § 341 Meeting on February 27, 2012, and "fired" him, and allegedly told him that if he attended the meeting, Brandi would "make a scene." (*Id.* at p. 4). Nuttall contends that he attempted to persuade Brandi, by phone and e-mail, to allow him to attend the meeting. Nuttall further contends that he even offered to return a partial portion of the $320 payment for the Second Chapter 7 Case, if the Debtors would cooperate and supply the required information and documents necessary for him to amend the petition and documents. Following this, Nuttall contacted the Trustee, and communicated the Debtors' unwillingness to cooperate with him.

Nuttall admits that he was negligent in failing to "drive to his virtual office in order to verify that the [petition and schedules] were signed by the Debtors," but that his conduct was neither fraudulent nor in bad faith. (*Id.* at p. 5). Moreover, Nuttall states that his failure to appear at the § 341 Meetings were in response to the Debtors' statements and threats.

The Trustee also filed response to the OSC. (Dkt. # 43, hereafter "Trustee Resp."). He attached various documents related to the statements raised in the OSC, including three letters from the Trustee to Nuttall dated between February and March 2012, and email correspondence between the Trustee and Nuttall dated March and April 2012. The Trustee advised that he was in process of obtaining a transcript of the initial § 341 Meeting on February 27, 2012, and that he and his assistant would attend the hearing on the OSC for testimony and/or cross-examination purposes. The Trustee subsequently filed a transcript of the initial § 341 Meeting. (Dkt. # 45, hereafter "§ 341 Tr.").

The matter came on for hearing on August 1, 2012, at which both Nuttall and the Trustee made appearances. Nuttall conceded that the Debtors never signed the bankruptcy petitions, but reiterated that he never intended to commit or assist in carrying out fraud on the court. Nuttall asserted that he trusted the Debtors and was simply foolish in failing to check whether the petition was signed before filing the petition. After being questioned by the court as to the amount of fees he had received from the Debtors, Nuttall stated that they had paid him $1,500 to file the First Chapter 7 Case, and then an additional $50 [5] to re-file the second case, but could not articulate the exact total amount that they paid. He instead countered that the exact amount of compensation was not an issue raised in the OSC.

The Trustee asserted that he was not taking a position on the OSC, but simply sought to clarify certain facts. Namely, this included that following the initial § 341 Meeting in the Second Chapter 7 Case, the Trustee sent at least two letters to Nuttall asking for copies of the petition and schedules with the Debtors' "wet-ink" signatures. The Trustee also pointed out that the Debtors had obtained a fee waiver in the Second Chapter 7 Case, notwithstanding the fact that the Fee Waiver Application was not signed by the Debtors, neither electronically nor by original signature. The Trustee also represented that he moved to dismiss the Second Chapter 7 Case because the Debtors had obtained a substantial tax return, and he was reluctant to commence a turnover action when

---

**5.** In fact, Nuttall's Response and the § 341 Meeting Transcript indicate that he received an additional $320, which appears to be consistent with the Debtors' testimony at the initial § 341 Meeting in the Second Chapter 7 Case.

**152**

it was unclear whether the Debtors had in fact filed for bankruptcy.

■ FRBP 9011(b) provides that:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Bankr.P. 9011(b). Determining whether an attorney violated FRBP 9011 is an objective standard, measured by the reasonableness of the attorney's conduct against other competent attorneys before the same court. *See In re Spickelmier,* 469 B.R. 903, 910 (Bankr.D.Nev.2012).

■ Local Rule 9004 provides that a user's CM/ECF log-in and password "serve[s] as a signature for the purposes of [FRBP] 9011, other Federal Rules of Bankruptcy Procedure, the Local Rules of this court, and any other purpose for which a signature is required in connection with proceedings before this court." *See* LR 5005(b); 9004(c)(1)(A) (same). Local Rule 9004 provides that using the "/s/" electronic signature constitutes the CM/ECF user's "representation that an originally signed copy of the document exists or that the electronic signature has been authorized, and *is in the filing user's possession at the time of filing."* LR 9004(c)(1)(C) (emphasis added).

Nuttall made several presentations to the court that are subject to FRBP 9011. Nuttall used his CM/ECF log-in and password to file the petitions and *other* documents, which constitutes a signature for the purposes of FRBP 9011. *See* LR 5005(b); LR 9004(c)(1)(A). His electronic signature on the petitions and other documents, such as the Disclosure of Compensation, also constitute a signature for the purposes of FRBP 9011. *See id.* By signing and submitting these documents, Nuttall certified to the court that he made a reasonable inquiry, and to the best of his knowledge, information and belief, that factual contentions contained in the petition and *other documents,* as well as the documents themselves, were supported by evidence.

Under this construct, Nuttall violated FRBP 9011(b)(3). The transcript of the initial § 341 Meeting shows that the Debtors never saw—let alone signed—the petition or other documents, either before or after the documents were filed. (§ 341 Tr. at p. 3). Nuttall concedes that he never reviewed the petition or other documents prior to filing, and that the Debtors never signed the petitions or other documents filed in either bankruptcy case. The reasonable attorney would have ensured that the Debtors had the opportunity to review and verify the accuracy of statements

made in the petition and other documents. *See* Fed.R.Bankr.P. 1008 (petition, schedules and statements are made under the penalty of perjury, and thus, must be verified or contain an unsworn declaration pursuant to 28 U.S.C. § 1746). Moreover, the reasonable attorney would have ensured that these documents were properly executed in accordance with the Federal Rules of Bankruptcy Procedure and Local Rules. Nuttall did neither. Instead, he presented petitions and documents to the court before making a reasonable inquiry that the documents contained evidentiary support, i.e., he falsely certified that he possessed the petition and other documents bearing the Debtors' original signatures. This constitutes a violation of LR 9004(c)(1)(C) and FRBP 9011(b)(3). *See, e.g., In re Tran*, 427 B.R. 805, 808 (Bankr. N.D.Cal.2010), *aff'd sub nom., In re Nguyen*, 447 B.R. 268 (9th Cir. BAP 2011); *In re Daw*, 2011 WL 231362, *4 (Bankr.D.Idaho 2011); *see also Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 382 (9th Cir. BAP 2011) (debtor's attorney may be sanctioned under FRBP 9011 for failing to conduct reasonable inquiry into facts underlying schedules and statement of financial affairs).

 Nuttall also filed other documents, including his Disclosure of Compensation and the Fee Waiver Application. In his Disclosure of Compensation, Nuttall stated: "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associ-

ates of my law firm." (Dkt. # 1 at p. 39). In his Response, however, Nuttall provides that he paid an "experienced bankruptcy paralegal $300 to assist with the preparation and submission of the Bankruptcy documents." (Nuttall Resp. at p. 2).[6] This was not disclosed in any of the documents filed in either of the bankruptcy cases, and makes Nuttall's representation in his Disclosure of Compensation false.

Nuttall also states that he obtained an additional $320 in order to re-file the Second Chapter 7 Case. His Disclosure of Compensation in the second case, however, does not reflect this. It states that he was paid $1,500, which is the same amount that he received in the first case. This is not information that Nuttall needed from the Debtors to correctly reflect in the Disclosure of Compensation. The reasonable attorney would have disclosed these additional fees on their disclosure of compensation form, which Nuttall failed to do. Nuttall failed to act as a reasonable attorney by submitting a Disclosure of Compensation that omitted certain (and required) information which rendered his statement false.

Nuttall additionally submitted a Fee Waiver Application in the Second Chapter 7 Case (Dkt. # 7), which was not signed by the Debtors. An order approving this application was entered (Dkt. # 15), thus waiving the Debtors' filing fees. Nuttall, however, had already requested and obtained an additional $320 to "re-file" their bankruptcy case.[7] The reasonable attorney would not have submitted a fee waiver

---

**6.** Nuttall further stated that this "experienced bankruptcy paralegal" was "conveniently located in the same building where [he] has his virtual office." (Nuttall Resp. at p. 2). This is troublesome for various reasons, given that it does not appear that this paralegal is an employee of Nuttall's firm. If that is the case, Nuttall's compensation to the paralegal may have also violated Section 504, which prohibits an attorney from "fee-splitting" with per-

sons that are not part of the attorney's law firm, or other narrow exceptions not applicable here. *See* 11 U.S.C. § 504(a).

**7.** At the hearing on the OSC, Nuttall could not account for the exact amount of fees and compensation paid by the Debtors, and did not have an accounting with him. According to Nuttall's estimation, the Debtors' paid $1,500 for Nuttall's services and $300 (osten-

application without the Debtors' review and signatures. The reasonable attorney also would not have kept the additional fees paid by the Debtors following the court's order approving the filing fee waiver, particularly when his legal services were terminated shortly after the bankruptcy was filed. As such, Nuttall failed to act as a reasonable attorney by filing the Fee Waiver Application, and then keeping the additional money from the Debtors when he obtained the fee waiver.

Nuttall further states that he was "fired" by Brandi on or before the initial § 341 Meeting in the Second Chapter 7 Case, and was told that if he appeared at the meeting, she would "make a scene." (Nuttall Resp. at p. 4). He contends that the Debtors were uncooperative and refused to provide essential information necessary for him to amend the petition and schedules. To the extent that any or all of these allegations are true, the reasonable attorney would have advised the court and the Trustee that he or she was working to resolve issues with their client and sought continuances as appropriate. Moreover, the reasonable attorney would have moved to withdraw as the debtor's counsel if he or she felt threatened, or that the client relationship was unreconcilable such that he or she could not properly represent the debtor. The reasonable attorney would not have simply refrained from making any appearance or taking any action in the bankruptcy case. Here, it was not until the Trustee sent Nuttall a letter following up on the Debtors' testimony at the initial

§ 341 Meeting that Nuttall first indicated that he was allegedly having issues with the Debtors. (Trustee Resp. at p. 9). The e-mail exchange between Nuttall and the Trustee clearly shows that Nuttall was aware that the Debtors had terminated his legal services in February 2012. (*Id.* at pp. 9, 12).

In conclusion, Nuttall violated FRBP 9011(b)(3) by submitting (and in some cases signing) documents that lacked evidentiary proof, namely, that the Debtors reviewed and physically signed the petitions and other statements under the penalty of perjury.

■ Sanctions for violating FRBP 9011 are "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Bankr.P. 9011(c)(2). This may include disgorgement of attorneys fees pursuant to Section 329.[8] *See In re Spickelmier,* 469 B.R. at 914–15.

■ Section 329 provides that the court may order the disgorgement of fees if the "compensation exceeds the reasonable value" of legal services. 11 U.S.C. § 329(b). Whether an attorneys compensation exceeds the reasonable value is determined on a case by case basis, based on if "the work done was excessive or of poor quality." *See In re Spickelmier,* 469 B.R. at 914, *citing* 3 COLLIER ON BANKRUPTCY ¶ 329.04[1] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2012); *Hale v. U.S. Trustee (In re Basham),* 208 B.R. 926, 933 (9th Cir. BAP 1997).

---

sibly for the filing fee) prior to filing the first case. They then paid $220 to file some type of continuance or extension that never occurred; and then another $320 to file the second case. Nuttall stated that the last amount was supposed to be $360, encompassing $306 for the filing fee and $50 for Nuttall's additional time in filing the second case, but that the Debtors only paid him $320. This equates to an approximate total of $2,340. At the initial § 341 Meeting, the

Debtors stated that they had paid Nuttall approximately $2,600 in total. (§ 341 Tr. at p. 6). Thus, the amounts appear to be generally consistent.

8. The OSC expressly placed Nuttall on notice that possible sanctions against him included disgorgement of fees under Section 329. (Dkt. # 40 at p. 8).

Here, Nuttall's representation of the Debtors reflects both a lack of competence and diligence. The Debtors paid Nuttall $1,500 to file a Chapter 7 bankruptcy case. Rather than ensuring that he took care in filing his first bankruptcy case [9] as required by statute and applicable procedural rules, Nuttall paid an "experienced bankruptcy paralegal" to prepare the "bankruptcy documents." It is unclear what this encompassed given that a skeletal chapter 7 bankruptcy petition was initially filed, and the Debtors' schedules were not filed until late December 2011. Nuttall filed the first petition without reviewing it, which as discussed above, was neither reviewed nor signed by the Debtors.

Nuttall committed the same error when he filed the petition, schedules, and statements commencing the Second Chapter 7 Case. Even assuming that he did not attend the § 341 Meeting because he was "fired" by Brandi prior to the initial meeting, Nuttall did not advise the court or Trustee as to his alleged issues with the Debtors, or move to withdraw from the case. He made no effort to respond or appear at the hearing for the Trustee's dismissal motion. In fact, in his e-mail to the Trustee April 2, 2012, Nuttall stated that he owed $270 to the Debtors "on completion of the case, assuming that they [did not] require further work of [his] office." (Trustee's Resp. at p. 12). It is unclear how the Debtors could have required additional work from Nuttall, given that they had terminated his services at that point.

Nuttall's legal services entailed two bankruptcy filings that he never should

have filed in the first place. He submitted and obtained a waiver for filing fees notwithstanding the fact that he obtained additional fees from the Debtors to file the Second Chapter 7 Case. He also neglected to fully disclose his payment of $300 to an "experienced bankruptcy paralegal" to assist in preparing and submitting the petition and documents in the first case. Nuttall never advised the court or Trustee as to his alleged issues with the Debtors, or moved to withdraw as counsel. Based on the foregoing, the court finds that Nuttall's services were deficient and of poor quality; thus, his compensation exceeded the reasonable value of his services to the Debtors in both Chapter 7 cases.[10]

The court is persuaded that Nuttall did not act with the specific intent to act in bad faith. Nonetheless, the court is considerably concerned by Nuttall's inability to fully appreciate that his various actions and conduct violated FRBP 9011, the Local Rules, his duties to this court, and his duties to his clients. Because Nuttall does not have a history of compliance or competency issues, the court finds that a sufficient sanction to deter repetition of Nuttall's conduct is disgorgement of all compensation and fees pursuant to Section 329, as outlined below.

Failure to comply with this order may result in the imposition of additional and more serious sanctions, including but not limited to referral of the matter to the State Bar of Nevada and suspension from practice before this court for one year.

**IT IS THEREFORE ORDERED** that Nuttall must disgorge all monies (whether for compensation, fees, or any other type of payment) paid by the Debtors to Nuttall

9. At the hearing on the OSC, Nuttall stated that the Debtors' case was the first bankruptcy case he had "processed on his own."

10. Even his Response to the OSC was replete with carelessness; he references an exhibit

that was not attached, and attached the declaration of an individual named Todd Weseley Howell, which references a Motion to Set Aside Default. (Nuttall Resp. at pp. 2, 6).

in connection with both of their Chapter 7 bankruptcy cases to the Trustee within 21 days from the date of entry of this order. Nuttall must file proof of disgorgement, in the form of an affidavit or declaration, with the court within 28 days from the date of entry of this order.

**IT IS FURTHER ORDERED** that Nuttall must attach a detailed statement to the proof of disgorgement, accounting for all monies that the Debtors paid to Nuttall in connection with both of their Chapter 7 bankruptcy cases.

**IT IS FURTHER ORDERED** that upon receipt of the disgorged monies, the Trustee is permitted, but not required, to deduct $500.00 for his services in connection with this matter, and then remit the balance to the Debtors within 14 days of receipt.

**IT IS SO ORDERED.**