IN RE: Erik SUNDQUIST and Renée Sundquist, Debtors.

Erik Sundquistand Renée Sundquist, Plaintiffs,

v.

Bank of America, N.A.; Recontrust Company, N.A.; BAC Home Loans Servicing, LP, Defendants.

Case 14–02278
Case No. 10–35624
Adv. Pro. No. 14–02278
Docket Control No. ELG–1

United States Bankruptcy Court, E.D. California.

Signed November 15, 2017

Mark E. Ellis, Ellis Law Group, LLP, Sacramento, California, for Plaintiffs.

Orly Degani, Degani Law Offices, Los Angeles, California; Sandor T. "Ted" Boxer, Law Offices of Sandor T. Boxer, Los Angeles, California, for Dennise Henderson, Attorneys' Lien Claimant.

Before: Christopher M. Klein, Bankruptcy Judge

## OPINION ON MOTION TO EXPUNGE ATTORNEYS' FEE LIEN

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This Motion to Expunge an attorneys' fee lien asserted by the debtors' former attorney involves an important tool in the

judicial toolbox for addressing the dilemma of counsel who incompetently represent debtors who have a meritorious case.

Former counsel asserts an attorneys' fee lien as a challenge to the bankruptcy court's power to cancel an attorneys' contract under Bankruptcy Code § 329(b), 11 U.S.C. § 329(b), and to limit fees for debtors' counsel to "reasonable" compensation.

The lien is being used as a device to create "hold-up" value by impeding settlement efforts by plaintiffs and defendant in order to extract a fee "far higher" than what this court authorized as "reasonable" compensation under § 329(b).

The Motion to Expunge is GRANTED; the § 329(b) order requiring that the plaintiffs pay the former attorney $70,000.00 as § 329(b) "reasonable" compensation remains in effect.

### Facts

The underlying facts are set forth in this court's reported decision, Sundquist v. Bank of America, N.A., 566 B.R. 563, 571–85 (Bankr. E.D. Cal. 2017), and will be merely summarized here.

Attorney Dennise Henderson represented Erik and Renée Sundquist in their chapter 13 case filed June 14, 2010. A series of automatic stay violations by Bank of America, including foreclosure, prosecution of an unlawful detainer action, and other uncivilized conduct ensued that prompted the Sundquists to give up their effort to use a chapter 13 plan to cure a bank-induced default while they attempted to negotiate a mortgage modification. They voluntarily dismissed the chapter 13 case on September 20, 2010, and Ms. Henderson ceased to represent them.

Presaging what was to come when she re-emerged in 2014 for the eventual stay violation litigation, during the period between filing the case on June 14 and dismissing on September 20, 2010, Ms. Henderson made no complaint to the court and did not figure out an effective strategy to bring Bank of America to book for its stay violations.

After the chapter 13 case was dismissed, Bank of America kept exacerbating the consequences of its prior stay violations.

The Sundquists, represented by another not-very-competent counsel, sued under state law in 2011, which complaint was dismissed by the state trial court. On appeal, the California Third District Court of Appeal, while critical of the poor quality of the drafting of the complaint, reversed the dismissal in 2014, ruling that the complaint stated causes of action on six state-law counts including deceit and various fiduciary breaches.

As to the count alleging wrongful foreclosure, however, the California appellate court invoked conflict preemption to rule that Bankruptcy Code § 362(k)(1) preempts state-law wrongful foreclosure claims that are based solely on violation of the automatic stay and concluded that such claims are within exclusive federal jurisdiction. It ruled that if the Sundquists desired relief on account of the bankruptcy automatic stay violations, they would have to return to federal court.

The Sundquists re-employed Ms. Henderson to prosecute their § 362(k) (1) cause of action in federal court. Upon filing, the district court referred the civil action to this bankruptcy court as a core proceeding.[1] Accordingly, this court presided over the discovery phase, in which

---

1. This court does not question the litigation judgment to focus only on the § 362(k)(1) cause of action.

there were discovery disputes, and presided over the bench trial.

At trial, the evidentiary presentation orchestrated by Ms. Henderson consisted of little more than the testimony of the Sundquists, accompanied by a long and vague declaration that summarized the contents of Renée Sundquist's diary, which declaration was admitted by agreement of the parties. Ms. Henderson did not attempt to introduce the actual diary, extracts of which came into evidence as exhibits that had been marked by Bank of America and that were admitted under the circumstances described in footnote 58 of the opinion, without sponsorship by Ms. Henderson. Sundquist, 566 B.R. at 590 n.58.

Although various items of physical damages and economic damages were the subject of testimony, there was virtually no corroborative documentary evidence. This left the court in the uncomfortable position of having to note in its decision that "some components of actual damages will be less than what might have been proved with more precise evidence." Sundquist, 566 B.R. at 590. Time and time again, this court was forced to estimate damages in various categories on the low side and include a footnote to the effect that if the case were to need to be retried, the Sundquist evidence likely would be considerably more robust. E.g., Sundquist, 566 B.R. at 604 n.88.

Since § 362(k)(1) is unusual in that it specifies that attorney fees are a component of actual damages, with the consequence that fees could operate to increase punitive damages, and not merely be an additional charge, it was important to ascertain Ms. Henderson's legitimate fees.

Ms. Henderson did not comply with the requirement of Federal Rule of Bankruptcy Procedure 2016(b) that she file, within 15 days after executing the fee agreement with the Sundquists for representing them in the adversary proceeding, the statement required by § 329 disclosing the compensation agreed to be paid. Accordingly, this court issued an order reminding Ms. Henderson of the applicability of § 329 and of Rule 2016(b) and directing her to file the delinquent statement.

The ensuing supplemental statement stated that fees were on an unspecified contingency. Case 10–35624, Dkt. 69 (9/12/16).

This court thereupon, consistent with Federal Rule of Bankruptcy Procedure 2017(b), ordered that Ms. Henderson file a copy of the contingency fee agreement. The order explained that contingency fee agreements are subject to § 329(b) review for reasonable value of services and noted that it is not clear that a contingency fee is consistent with the attorneys' fee structure in § 362(k)(1). The order required that she justify the agreed contingency fees as representing the reasonable value of services within the meaning of § 329(b) and that she explain how the contingency fees comported with the attorneys' fee structure set forth in § 362(k)(1). Case 10–35624, Dkt. 70 (9/14/16).

Ms. Henderson filed a copy of a contingency fee agreement dated October 22, 2014. Case 10–35624, Dkt. 74 (9/23/16). In fact, the "Attorney–Client Fee Agreement" was two different documents pasted together with non-consecutive paragraphs. The first two pages end in the middle of paragraph no. 3; the third page, in a distinctly different typeface, began with paragraph no. 11.[2] It is now conceded that this

2. It has now been revealed that the purported agreement that Ms. Henderson filed was a

2016 back-dated reconstruction and revision of a supposed 2014 agreement that has never

was a 2016 document back-dated to 2014. Although Ms. Henderson now explains that she filed an inaccurate copy of her fee agreement and "apologizes,"[3] she has not filed a corrected copy.

Ms. Henderson also filed a Supplemental Briefing Regarding Attorneys' Fees in which she urged that § 329(b) reasonable compensation be determined consistent with 11 U.S.C. § 330(a)(3) which looks to the nature, extent, and value of services, taking into account all relevant factors, including, time spent, rates charged, and customary compensation of comparably skilled attorneys in other cases. She added, "I will file a time billing with the actual time expended and will only seek the lesser of the contingency agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method." Other than a naked assertion that customary compensation can be a contingency fee, she offered no justification for the contingency fee agreement. Case 10–35624, Dkt. 73 (9/23/16).

Ms. Henderson filed a declaration documenting 207.56 hours spent on the § 362(k)(1) adversary proceeding at a rate of $300.00 per hour (= $62,268), together with costs for depositions, transcripts, and trial binders of $6,606.55 for a total of $68,874.55. Case 10–35624, Dkt. 75 (9/26/16).[4]

Mindful that lodestar compensation measured by counsel's billing rate multiplied by the number of hours devoted to the case, plus reimbursement of actual costs, is "strongly" presumed to be reasonable, Burgess v. Klenske (In re Manoa Finance Co.), 853 F.2d 687, 691–92 (9th Cir. 1988), this court fixed the attorneys' fee component of § 362(k)(1) actual damages at $70,000.00. This was actually more than the lodestar amount that Ms. Henderson stated that she was requesting.

Ms. Henderson did not seek an enhancement above her lodestar compensation. Nor did she proffer specific evidence to rebut the presumption against a bonus. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564–69, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

Treating Ms. Henderson's doctored, back-dated contingency fee agreement at face value, this court concluded that the

---

been provided. Exhibits filed by Ms. Henderson responding to this motion to expunge attorneys' lien included an email exchange in September 2016, containing three different versions of an Attorney–Client Fee Agreement, which was being "re-created" and signed at that time. Adv. Pro. 14–02278, Dkt. 452 (9/12/17), Ex. 1, pp. 30–47.

All three of these versions differ from what was actually filed on September 23, 2016. Version 1, transmitted by Ms. Henderson to the Sundquists September 19, 2016, has only the signature of Ms. Henderson, back-dated to 11/2/14. Dkt. 452 (9/12/17), Ex. 1, pp. 33–35. Version 2, transmitted by Mr. Sundquist to Ms. Henderson, adds to version 1 the signature of Mr. Sundquist, back-dated to 11/2/14. Dkt. 452 (9/12/17), Ex. 1, pp. 37–39. Version 3 is not identical to versions 1 and 2 and has the signatures of both Sundquists and Ms. Henderson, back-dated to 10/22/14. Dkt. 452

(9/12/17), Ex. 1, pp. 43–45. Ms. Henderson's message accompanying the transmission of version 3 is: "Sorry round three with this fee agreement. I have to have language in there that lays out exactly how you are made whole. Just a few changes in language if you don't mind taking a look at one more and if you have questions give me a call otherwise send it back with signatures." Ex. 1, pp. 46–47.

3. Declaration of Dennise Henderson in Support of Her Opposition to the Sundquists' Motion to Expunge Her Attorneys'. Fees Lien, Adv. No. 14–02278, Dkt 451, ¶ 22 (9/12/17).

4. Although Ms. Henderson now says that she omitted time and expenses, she has not sought to document additional time and expenses. Declaration of Dennise Henderson in Support of Her Opposition to the Sundquist' Motion to Expunge Her Attorneys' Fees Lien, Adv. No. 14–02278, Dkt 451, ¶ 21 (9/12/17).

contingency fee exceeded the reasonable value of services within the meaning of § 329(b) and canceled the agreement. Two adequate, independent reasons support that conclusion.

First, as stated in this court's published decision on the merits, the structure of § 362(k)(1) that incorporates fees as an element of actual damages leads to a non-sensical loop.

The second adequate, independent reason was Ms. Henderson's lack of competence. This court, out of distaste for being overtly critical of individual counsel, initially preferred to address the problem of her lack of competence between the lines by way of comments scattered throughout the opinion.

Now, however, that Ms. Henderson has announced her intention to appropriate to herself more of the Sundquists' recovery than $70,000.00 and has promised to appeal, the appellate courts deserve candor from the trial court.

With considerable regret at the necessity of being blunt in print, Ms. Henderson's performance in this adversary proceeding was, in this court's experience of having tried bench trials in adversary proceedings and contested matters arising (as of November 14, 2017) in 151,817 bankruptcy cases since February 1988,[5] and considering the importance and magnitude of the issues involved in the litigation, among the ten weakest performances by counsel for debtors that it has had the misfortune to observe. It was as if she was in deep water, flailing with beginner strokes. Ms. Henderson did not prepare a trial brief.[6] Her trial presentation was disorganized. Her notebook of plaintiffs' exhibits was slovenly assembled. She demonstrated no proficient knowledge of the Federal Rules of Evidence or of the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure incorporated therein. The pretrial declarations of the Sundquists mandated by Local Bankruptcy Rule 9017-1 were crude and conclusory in content. She made no attempt to introduce the Renée Sundquist diary into evidence, which, ironically, was introduced by way of Bank of America's marked exhibits and wound up putting important flesh on the bones. Her questions were amateurish. She showed no ability to lay a foundation for introducing evidence; fortunately, most of her proffered exhibits were admitted without objection to foundation. Her demonstration of the facts was disjointed and difficult to decipher. She had no coherent theory of damages. Her closing argument did not connect any helpful dots. What saved the case for the plaintiffs was that, while poorly prepared to testify, they were so credible that the court could not in good conscience let the poor performance by counsel stand in the way of justice.

One reason this court's decision took some months to prepare was that Ms. Henderson had been of no help regarding the complex facts and legal theories. The process of wading through all the exhibits in the context of the testimony consumed time, required reflection, and entailed considerable research into intricacies of the law of actual and punitive damages.

This court's § 362(k) (1) judgment awarded the Sundquists $1,074,581.50 in actual damages and $5,000,000.00 in punitive damages, a total of $6,074,581.50. Additional punitive damages of $40,000,000.00 awarded to the Sundquists was allocated

---

5. Source: Clerk, U.S. Bankruptcy Court, E.D. Cal.

6. AS this court explains whenever it does not specifically mandate a trial brief: "trial briefs are permitted but not required; good lawyers provide them, not-so-good lawyers do not."

by mandatory injunction to deliver the after-tax residue of that sum to the National Consumer Law Center, National Consumer Bankruptcy Center, and five public law schools. The Sundquists were also enjoined, by mandatory injunction, to deliver $70,000.00 to Ms. Henderson as § 329(b) "reasonable" compensation.

Far from being the result of Ms. Henderson's performance, the judgment was entered despite her work. Heretofore, the court has expressed its frustration obliquely and intended to keep it that way, but her subsequent activity has forced the court to be explicit so that no appellate tribunal will be confused.

Once the Sundquists replaced her, Ms. Henderson filed a Notice of Lien "by virtue of a written fee agreement with said parties dated October 22, 2014," on any judgment or settlement paid to secure the payment for legal services rendered and costs and expenses "in accordance with the terms of the aforementioned fee agreement." Adv. No. 14–02278, Dkt. 315 (4/26/17).

The notice of lien, by its terms, asserts a contractual lien without referring to an equitable lien or quantum meruit, yet from the manner in which Ms. Henderson conflates apples with oranges by talking about equitable liens (and from her concession that her contract has been voided under state law for violation of California ethics rules) it seems that she must now be asserting only an equitable lien.

If the issue is quantum meruit, then, as a finding of fact, this court determines that the quantum Ms. Henderson's services were worth did not exceed the $70,000.00 previously authorized, which is more than the number of hours she devoted to the case, multiplied by her normal billing rate, plus claimed expenses.

The present procedural posture of the case is that there are pending cross-motions to reopen the evidence—Bank of America wishing to expunge the Renée Sundquist diary and the Sundquists to prove more damages. There is also a motion to vacate the judgment and dismiss the adversary proceeding on account of a settlement that would pay the Sundquists "more than" the $6,074,581.50 provided in the judgment and muzzle them.

Ms. Henderson has been acting through counsel to interfere with that proposed settlement by threatening to sue Bank of America by way of collateral attack unless Ms. Henderson receives fees that "far exceed the $70,000 allocated in Judge Klein's March 23, 2017 decision." [7] She also has

---

7. By letter dated October 9, 2017, and provided to the court by agreement in open court, Ms. Henderson's attorney Orly Degani wrote to counsel for Bank of America:

> ... No matter what Judge Klein decides to do regarding Ms. Henderson's lien on the Sundquists' judgment, Bank of America will be acting at its own risk if it makes any payment to the Sundquists in disregard of Ms. Henderson's claim for her fees. While we have been kept in the dark thus far as to the amount of the proposed settlement between Bank of America and the Sundquists, it is our position that Ms. Henderson is entitled to a portion of the settlement sum in an amount yet to be determined, either by a court exercising proper jurisdiction over the matter (not Judge Klein) or by settlement with the Sundquists. Either way,-the fees due to Ms. Henderson far exceed the $70,000 allocated in Judge Klein's March 23, 2017 decision. We will take whatever legal steps are necessary to protect her right to recover the fees we believe she is due, including appealing or petitioning for writ relief, as appropriate, from any potential adverse ruling by Judge Klein. Please be on notice that ignoring Ms. Henderson's fee claim in reliance on any ruling by Judge—Klein which we will take up with a higher court may subject Bank of America to liability ....

threatened to sue the Sundquists under the Uniform Voidable Transactions Act.[8]

### Jurisdiction

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. This is a core proceeding that a bankruptcy judge may hear and determine. 28 U.S.C. §§ 157(b)(K) & (O).

The challenge to jurisdiction is addressed infra.

### Pertinent Statutes and Rules

§ 329 Debtor's transactions with attorneys.

(a) Any attorney representing a debtor in a case, or i connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate;

or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

11 U.S.C. § 329.

Rule 2016(b). Disclosure of Compensation Paid or Promised to Attorney for Debtor. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the com-

---

8. On October 13, 2017, in an email provided to the court by agreement in open court, Ms. Henderson's attorney Sandor "Ted" Boxer wrote to Sundquist counsel Mark Ellis:

> ... it does not follow that the Sundquists will be free even if their motion to expunge is granted to at any time in the foreseeable future deal with the amounts sought by my client regardless of Judge Klein's ultimate ruling for at least two reasons.
> First, Orly has already made clear what I believe has been well known (if for no other reason than the nature of her practice as an appellate attorney) that whatever ruling Judge Klein makes is unlikely to be final for some time. My purpose by this email is to bring to your attention a second factor impinging upon the ability of the Sundquists to deal anytime soon with a significant por-

tion of their recovery, the potential for a suit under the Uniform Voidable Transaction Act ("UFTA" [sic]) found in Civil Code section 3429 [sic—§ 3439] if the Sundquists were to attempt to deal inappropriately with the recovery.

In general the UFTA provides remedies (set aside the transfer, punitive damages) for any attempt by the Sundquists to transfer their property with the intent to "hinder, delay or defraud" Ms. Henderson. In measuring intent, there are a variety of factors set forth in the statute. One of those factors is "Whether before the transfer was made ... the debtor had been sued or threatened with suit." Clearly, the Sundquists must understand that Ms. Henderson has and will pursue her legal remedies to recover what she believes is due her ....

pensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).

Rule 2017(b). Payment or Transfer to Attorney After Order for Relief. On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment, transfer, or agreement therefor is for services in any way related to the case.

Fed. R. Bankr. P. 2017(b).

### Analysis

In order to circumvent this court's § 329(b) order canceling the contingent fee contract and limiting reasonable compensation to $70,000.00, the former counsel challenges this court's jurisdiction. As she concedes that the actual fee contract is, regardless of § 329(b), now unenforceable under state law, her theory is that state-law quantum meruit principles (which equate with "reasonable" in California law) take precedence over § 329(b) and permit a fee that "far exceeds" $70,000.00. Not so.

### I

■ Jurisdiction is the linchpin. Henderson insists there is no federal jurisdiction over her fees for representing the Sundquists in their action enforcing Bankruptcy Code § 362 and that only a California state court may adjudicate her fees.

Her premise that the bankruptcy court's power over the attorneys' fees pursuant to § 329 terminated when the case was closed is flawed by the existence of retained jurisdiction.

Her reasoning that the absence of a bankruptcy estate and of creditors to protect deprives this court of jurisdiction to apply § 329(b) to an award payable directly to the Sundquists is incomplete because § 329(b) also protects the Sundquists.

### A

■ Federal subject-matter jurisdiction attached with the filing of the chapter 13 case on June 14, 2010. 28 U.S.C. § 1334(a).

### B

■ Claims of entitlement to an attorneys' fee lien for representation in actions prosecuted under federal bankruptcy jurisdiction are also within federal bankruptcy jurisdiction.

Bankruptcy jurisdiction extends to cases under title 11, and to civil proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 1334(b).

■ This jurisdiction is "very broad, including nearly every matter directly or indirectly related to the bankruptcy" and "derives directly from the [Constitution's] Bankruptcy Clause, which grants Congress the power '[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States.' U.S. Const. art. 1, § 8." Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 868–69 (9th Cir. 2005).

■ Bankruptcy jurisdiction includes supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Sasson, 424 F.3d at 869.

■ Discharge of a debtor does not automatically deprive federal courts of jurisdiction over a claim "related to bankruptcy." Sasson, 424 F.3d at 869; Kieslich v. United States (In re Kieslich), 258 F.3d 968, 971 (9th Cir. 2001).

This includes post-confirmation bankruptcy jurisdiction over state law claims such as breach of contract, breach of covenant of good faith and fair dealing, and fraud where such claims have a "close nexus" to the bankruptcy case. Sasson, 424 F.3d at 869; Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1194 (9th Cir. 2005).

■ Bankruptcy courts even have post-discharge jurisdiction to enjoin collection actions in another country. Sasson, 424 F.3d at 869; Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir. 1998).

■ Bankruptcy courts retain broad equitable powers to carry out the provisions of the Bankruptcy Code. Johnson v. Home State Bank, 501 U.S. 78, 88, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); Sasson, 424 F.3d at 869; Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1174 (9th Cir. 2003).

These powers are ample for the exercise of federal jurisdiction over the fees of a California lawyer, and attendant liens for fees, in a bankruptcy matter notwithstanding that such matters are ordinarily resolved in state courts.

C

The dismissal of the Sundquist chapter 13 case before this stay enforcement action was filed does not affect the exercise of bankruptcy jurisdiction over the fees of debtors' counsel.

■ After a bankruptcy case is dismissed under § 349, there remains a resid-uum of federal bankruptcy jurisdiction. Carraher v. Morgan Electronics, Inc. (In re Carraher), 971 F.2d 327, 328 (9th Cir. 1992) (discretion to retain "related to" case); Fid. & Dep. Co. of Md. v. Morris (In re Morris), 950 F.2d 1531, 1533–35 (11th Cir. 1992) (same).

Such residual jurisdiction includes matters "arising under" the Bankruptcy Code and ancillary matters, such as dealing with attorneys' fees. Elias v. U.S. Trustee (In re Elias), 188 F.3d 1160, 1162 (9th Cir. 1999); Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 481 (9th Cir. 1989); U.S.A. Motel Corp. v. Danning (In re U.S.A. Motel Corp.), 521 F.2d 117, 118 (9th Cir. 1975).

■ Likewise, enforcement of the automatic stay is a civil proceeding "arising under title 11" over which the bankruptcy court retains jurisdiction after dismissal of the case. Johnson v. Smith (In re Johnson), 575 F.3d 1079, 1082–84 (10 Cir. 2009); Price v. Rochford, 947 F.2d 829, 830–32 (7th Cir. 1991); Davis v. Courington (In re Davis), 177 B.R. 907, 911 (9th Cir. BAP 1995); cf. 40235 Washington St. Corp. v. Lusardi, 329 F.3d 1076, 1080 n.2 (9th Cir. 2003) (retained jurisdiction to annul § 362 stay).

■ Similarly, the attorneys' fees incurred by a debtor in vindicating violations of the automatic stay remain subject to § 329(b). Cases such as Elias and Tsafaroff render the contention that this court lost jurisdiction over attorney fees upon dismissal of the chapter 13 case lacking in merit.

D

Nor did closing the Sundquist chapter 13 case terminate § 1334 jurisdiction. That much is evident from the Bankruptcy Code reopening provision: "A case may be reopened in the court in which such case was

closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

■■■ In a chapter 7 case, the closing of the case occurs concurrent with termination of the services of the trustee. 11 U.S.C. § 350(a). If unscheduled assets later emerge as property of the estate, it is administratively necessary to reopen the case in order to have a trustee appointed who may deal with the assets. Thus, when reopening a case under § 350(b), a court must determine whether a trustee is necessary to protect the interests of creditors and the debtor or to ensure efficient administration of the case. 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010.

■■■ Although closing and reopening of bankruptcy cases may have practical and administrative significance, reopening is not an act of jurisdictional significance. Staffer v. Predovich (In re Staffer), 306 F.3d 967, 972–73 (9th Cir. 2002); Menk v. LaPaglia (In re Menk), 241 B.R. 896, 905–06 (9th Cir. BAP 1999).

■■■ Much bankruptcy-related activity may occur without reopening a case: automatic stay enforcement; dischargeability actions; awards of compensation; imposition of sanctions; determinations of equitable subordination; contempt; dealing with unclaimed funds; motions for post-judgment relief; execution of judgments. Menk, 241 B.R. at 905–06.

It follows that the bankruptcy jurisdiction under § 1334 that attached upon filing in June 2010 survives today to enable the action against Bank of America for willful stay violations and to exercise authority over fees of debtors' counsel.

E

There are more layers to the jurisdictional onion.

■■■ Federal jurisdiction over civil proceedings "arising under" title 11 is "original but not exclusive jurisdiction;" i.e. concurrent state-federal jurisdiction. 28 U.S.C. § 1334(b).

■■■ The Sundquists' § 362 stay enforcement action is created by the Bankruptcy Code and, hence, "arises under" title 11.

■■■ The § 329(b) power to cancel attorneys' fee contracts and to limit fees to "reasonable" compensation is likewise created by the Bankruptcy Code and, hence, "arises under" title 11.

■■■ In contrast, an attorneys' lien for fees fixed through the exercise of § 329(b) authority does not "arise under" title 11. Rather, it is either "arising in" or "related to" the title 11 case. 28 U.S.C. § 1334(b).

■■■ The lien for fees fixed pursuant to § 329(b) fits best in § 1334(b) as "arising in" the case. "Arising in" proceedings are not based on a right expressly created by the Bankruptcy Code, i.e. not "arising under," but would not exist if a title 11 case had not been filed. Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.), 935 F.2d 1071, 1076 (9th Cir. 1991); Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987); Menk, 241 B.R. at 909; 1 COLLIER ON BANKRUPTCY ¶ 3.01[4] [c] [iv] (Alan Resnick & Henry Sommer eds. 16th ed. 2016) ("COLLIER").

Henderson's claim to a lien for fees that were subjected to § 329(b) would not exist if the Sundquist title 11 case had not been filed. It is inseparable from its bankruptcy context.

■■■ Recognizing the overlap between "arising in" and "related to," the claim for a lien for fees qualifies as "related to" the title 11 case on the supplemental jurisdiction theory that it is so related to the § 362 and § 329(b) claims within this

court's original jurisdictional that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. §§ 1334(b) & 1367; Sasson, 424 F.3d at 869.

## F

The next layer of the onion is abstention.

■ Henderson's assertion that her lien-based claim to fees must be determined by a California state court is construed as a § 1334(c) request for abstention. 28 U.S.C. § 1334(c).

Abstention subdivides into mandatory abstention and discretionary abstention.

## 1

■ This cannot be an instance of mandatory abstention under § 1334(c)(2), which can only occur with respect to a "related to" claim under state law, because there is no action commenced that can be timely adjudicated in a state forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2).

Indeed, this adversary proceeding arrived in federal court because the California Third District Court of Appeal ruled that the Sundquists' California cause of action for wrongful foreclosure based solely on a bankruptcy automatic stay violation is a matter of exclusive federal jurisdiction. Regardless of whether its conclusion about exclusivity of federal jurisdiction was correct, this constitutes a ruling by a state appellate court that the Sundquists' wrongful-foreclosure-in-violation-of-automatic-stay theory belongs in federal court.

The corollary is that the California courts view attorney fees associated with such a wrongful foreclosure action premised solely on a bankruptcy automatic stay as a matter also within the jurisdiction of the federal bankruptcy court.

## 2

■ Permissive abstention is potentially available under § 1334(c)(1). The statute provides that "nothing prevents" a court "from abstaining" in the interest of justice, or the interest of comity with state courts, or out of respect for state law. 28 U.S.C. § 1334(c)(1). That syntax commits the abstention question to the discretion of the court.

■ None of the § 1334(c)(1) factors would be served by abstaining from hearing what amounts to an end-run around a bankruptcy court's § 329(b) order. Interests of justice favor keeping trial-related matters in the one court, subject to one appellate system. Comity is not offended where the state court of appeals has disclaimed jurisdiction over the underlying cause of action. Respect for state law is not a factor because, first, § 329(b) is a federal question not based on state law and, second, it is conceded that the contingency fee contract has recently been voided as not having complied with state law.

This court elects not to exercise its discretion to abstain.

## G

In sum, automatic stay enforcement is a matter of retained jurisdiction under 28 U.S.C. § 1334. Neither the dismissal of the case, nor the closing of the case vitiates the bankruptcy court's authority to redress the automatic stay violations presented in this case.

Necessarily accompanying that retained jurisdiction is the § 329 bankruptcy court authority over the attorneys' fees that are "connected with" the bankruptcy case under the overlapping "arising in" and "related to" prongs of § 1334 jurisdiction.

While this court has discretion to abstain from exercising such jurisdiction, it elects not to abstain.

## II

Having concluded that the exercise of federal bankruptcy jurisdiction over the fees of debtors' counsel is appropriate notwithstanding the dismissal and the closing of the Sundquist chapter 13 case, the focus shifts to the terms of § 329(b).

### A

The relevant terms of § 329 require a statement of compensation and a remedy for excessive compensation.

Any attorney representing a debtor in connection with a case under title 11 must file a statement of compensation agreed to be paid, for any payment or agreement "made after one year before the date of the filing of the petition" for services to be rendered in connection with the case. 11 U.S.C. § 329(a).

If the agreed compensation "exceeds the reasonable value of such services, the court may cancel any such agreement" and limit compensation to reasonable value. 11 U.S.C. § 329(b).

#### 1

We start with the temporal. Payments and agreements "made after one year before the filing of the petition" must be disclosed in a filed statement. 11 U.S.C. § 329(a).

At face value, the payments and agreements subjected to disclosure reach back one year before the filing of the petition and extend after the filing of the petition indefinitely—theoretically, to the end of time.

That no time limit is suggested in the sweep of § 329 is not surprising. Congress provided for a number of indefi-

nite term situations in the Bankruptcy Code. Unscheduled property (typically an undisclosed cause of action or undisclosed interest in real estate) is not deemed abandoned and administered at the closing of the case and retains its status as property of the estate indefinitely. 11 U.S.C. § 554(d); e.g., In re Dunning Bros., 410 B.R. 877, 879 (Bankr. E.D. Cal. 2009) (case filed in 1936 reopened in 2009 to administer undisclosed interest in real estate). The automatic stay of acts against property of the estate does not terminate when a case is closed and "continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). The discharge injunction is permanent and may lead to enforcement proceedings years later. 11 U.S.C. § 524(a); e.g., Lone Star Sec. & Video, Inc., v. Gurrola (In re Gurrola), 328 B.R. 158, 164–76 (9th Cir. BAP 2005).

The § 329 obligation of an attorney for the debtor to disclose fees and fee agreements is co-extensive with a debtor's involvement in a bankruptcy case and remains in effect for so long as § 1334 jurisdiction connected with that case survives.

#### 2

The limiting principle for § 329 lies in the phrase "in connection with such a case." 11 U.S.C. § 329(a).

Rule 2017(b) supplies a rule of construction emphasizing that "in connection with" in § 329 is a broad concept that extends to "services in any way related to the case." Fed. R. Bankr. P. 2017(b).

Representation "in connection with such a case" necessarily includes everything that is premised on § 1334 jurisdiction.

It also includes supplemental jurisdiction under § 1367 over all other claims that are so related to claims in the action within the court's § 1334 original jurisdic-

tion that they form part of the same case or controversy under Article III of the United States Constitution. Sasson, 424 F.3d at 869; Pegasus Gold, 394 F.3d at 1195.

█ Representation "in connection with such a case" is not limited to actions in federal court. As § 1334(b) jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11 is "original but not exclusive"—i.e. concurrent federal and state jurisdiction— such actions might be prosecuted in state court. 28 U.S.C. § 1334(b).

Representation "in connection with such a case" extends to other actions in state courts in other states. The Fourth Circuit, speaking through a panel that included retired Supreme Court Justice Lewis Powell, held that two Ohio state-court actions pursued under state-law business tort theories against a bank to create leverage against that bank's nondischargeability action in a West Virginia bankruptcy case were "in connection with" the bankruptcy case. Burd v. Walters (In re Walters), 868 F.2d 665, 667 (4th Cir. 1989). In so ruling, it endorsed the broad "in any way related to" construction set forth in Rule 2017(b) and concluded that the bankruptcy court did not abuse discretion by exercising § 329(a) control over the Ohio lawyer's fees for state-court work. Walters, 868 F.2d at 666 n.1 & 667.

Here, the subject fees are for representing the Sundquists in prosecuting a § 362(k)(1) cause of action that "arises under" the Bankruptcy Code on account of automatic stay violations in their chapter 13 bankruptcy case. Such fees, beyond cavil, are "in connection with" their bankruptcy case for purposes of § 329.

### 3

█ The § 329(b) powers to cancel fee agreements and order return of payments to the extent that they exceed the "reasonable value" of services are committed to the discretion of the bankruptcy court. Am. Law Ctr., PC v. Stanley (In re Jastrem), 253 F.3d 438, 442 (9th Cir. 2001).

### a

█ In determining "reasonable value," the touchstone is the § 330(a)(3) list of considerations for determining reasonable compensation for officers and professional persons. 11 U.S.C. § 330(a)(3); Jastrem, 253 F.3d at 443 (invoking § 330(a)(3) in review of § 329(b) order).

The considerations focus on the nature, extent, and value of services, taking into account all relevant factors, including time spent, rates charged, and customary compensation in comparable cases. Jastrem, 253 F.3d at 443; 3 COLLIER ¶ 329.04 [1] [c].

█ In this circuit, a reasonable hourly rate multiplied by the number of hours actually and reasonably expended, the so-called lodestar rate, is presumptively a reasonable fee in a bankruptcy case. Manoa Finance, 853 F.2d at 691–92.

█ Here, Henderson documented 207.56 hours devoted to the Sundquist litigation at her usual hourly rate of $300.00, together with $6,606.55 in costs, for a total of $68,874.55.

█ Quality of services may be taken into account. Hale v. U.S. Trustee, 509 F.3d 1139, 1147 (9th Cir. 2007); In re Sponhouse, 477 B.R. 147, 155 (Bankr. D. Nev. 2012); In re Dean, 401 B.R. 917, 922 (Bankr. D. Id. 2008).

Here, the court took into account the factors identified in Manoa Finance and also considered the risk of nonpayment. The quality of performance was, in this court's judgment, not worthy of $300.00 per hour. Nevertheless, it accepted that

claimed rate, reasoning that it included an implicit enhancement (perhaps 50 percent) above normal lodestar for an attorney of her caliber of performance that could be justified as accommodating the risk of non-payment. Accordingly, the court determined that compensation in excess of $70,000.00 would be excessive within the meaning of § 329(b).

Although this court viewed the "reasonable value" question through the prism of § 329(b), there is an alternative and independent analysis that leads to the same result. The Ninth Circuit recognizes as part of making an actual damages award under § 362(k)(1) the authority of a bankruptcy court to limit fees to "fees reasonably incurred" and holds that courts awarding fees under § 362(k)(1) "retain the discretion to eliminate unnecessary or plainly excessive fees." America's Servicing Co. v. Schwartz–Tallard (In re Schwartz–Tallard), 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc).

Applying Schwartz–Tallard, this court in the exercise of its discretion is persuaded that a fee greater than $70,000.00 would be plainly excessive.

Either way, Manoa Finance teaches that this court's award of $70,000.00 is presumptively reasonable compensation.

b

Congress also provided in § 329(b) that the court may cancel a fee agreement. While the terms of that section do not expressly specify a standard for determining whether to cancel such an agreement, the ultimate question is whether the agreement would call for excessive compensation.

 Contingency fee agreements are as vulnerable to cancellation under § 329(b) as hourly fee agreements. Pope v. Knostman (In re Lee), 884 F.2d 897, 899 (5th Cir. 1989) ("Regardless of whether [attorney's] fee was a flat fee or a contingency fee, [attorney] was entitled to receive compensation only for the reasonable value of the services rendered to the Debtors.").

The context of § 362(k)(1) affects the analysis of the reasonableness of a contingency fee. The statutory phrase "shall recover actual damages, including costs and attorneys' fees," makes attorneys' fees a component of damages. Schwartz–Tallard, 803 F.3d at 1099–1101.

Where attorneys' fees are an element of actual damages in a automatic stay proceeding, such as this case, in which there are undeniable and non-trivial stay violations by a deep-pocketed creditor, some degree of § 362(k)(1) liability is virtually inevitable. Any liability will bring with it the certainty that reasonable attorneys' fees will be awarded and be collectable.

The structure of the unusual approach to fees in § 362(k)(1) indicates a policy by Congress to assure that attorneys will be assured of being paid fairly for their time and effort in vindicating the rights of individual victims of stay violations. This attorney-fee-friendly policy is furthered by assuring lodestar compensation for counsel who must enforce the automatic stay for injured individuals who, in the vast majority of cases, are impecunious debtors.

The corollary to the attorney-fee-friendly damages provision in § 362(k)(1) that materially reduces the risk of non-payment is to undermine the standard justification of the need for contingent fees—i.e. risk of nonpayment.

It was not irrational for Congress to create a structure that links attorneys' fees to the time and effort reasonably devoted to the task of enforcing the automatic stay, rather than to the amount of the ultimate award. The prospect of full reasonable compensation as an element of

actual damages reduces the incentives for counsel to complicate stay enforcement litigation by seeking extravagant punitive damages for personal profit or to pursue doubtful cases on speculation. Likewise, this structure gives the stay violator an economic incentive to make amends promptly, so as to minimize fee damages, rather than to wage litigation warfare.

When this court ordered Ms. Henderson to explain how her contingency fee agreement represents the reasonable value of services per § 329(b) and comports with the attorneys' fee structure set forth in § 362(k)(1), she did not try to square her contingency fee with the statute and, instead, quoted from Schwartz–Tallard and saying she "will only seek the lesser of the contingency fee agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method." Supplemental Briefing Regarding Attorneys' Fees, p. 2, Case 10–35624, Dkt. 73 (9/23/16).

It is now claimed that the "quantum meruit value of Ms. Henderson's services far exceeds the $70,000 the court awarded her." Supplemental Opposition to Motion to Expunge Lien, p. 11, Adv. Pro. 14–02278, Dkt. 511 (10/24/17).[9] There is still no attempt by Ms. Henderson to square a contingent fee, or a quantum meruit equivalent, with the structure of § 362(k)(1). The problem remains that the lodestar fee for Ms. Henderson's services is conceded to be $68,874.55. If the real fees "far exceed $70,000," then, in view of their status as actual damages, does the actual damages award need to be increased? How would that be justified in light of the command of Schwartz–Tallard to limit fees to fees reasonably incurred? No answers favorable to Ms. Henderson suggest themselves.

This court had the discretion under § 329(b) to cancel the contingency fee agreement. That discretion was exercised in favor of cancellation, mindful that counsel was being fully compensated according to her own version of lodestar principles.

## B

Rules 2016 and 2017 implement § 329. Fed. R. Bankr. P.2016 & 2017.

### 1

■ Nondisclosure and defective disclosure warrant denial of all fees in the discretion of the court.

### 2

Rule 2016(b) required Ms. Henderson to file a disclosure of compensation paid or promised to be paid within 14 days of the order for relief when the Sundquist case was filed in June 2016. She complied with that requirement.

Rule 2016(b) also required Ms. Henderson to file a supplemental statement within 14 days after entering into the agreement to represent the Sundquists in their § 362(k)(1) action. Taking her at her word that there was an agreement executed when or soon after she entered her appearance as counsel on September 19, 2014, she was in default of that obligation from 2014 until September 12, 2016, when she filed a supplemental statement that cryptically revealed "contingency" in response to this court's order. Case 10–35624, Dkt. 69 (9/12/16).

Rule 2017(b) permits the court on its own initiative, after notice and a hearing, to determine whether any fee agreement

---

9. The noise in Ms. Henderson's brief about the existence of a contingency fee with the Sundquists' successor counsel is a red herring. This court has not endorsed that fee arrangement and has not yet had the occasion to address it.

with an attorney entered after the order for relief in the case is excessive if the agreement "is for services in any way related to the case." Fed. R. Bankr. P. 2017(b).

The phrase "notice and a hearing" means notice as is appropriate in the particular circumstances and opportunity for a hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1)(A).

An act is authorized without an actual hearing if notice is given properly and if an actual hearing is not requested timely by a party in interest. 11 U.S.C. § 101(1)(B)(i).

This court complied with the notice and opportunity for hearing requirement by way of two orders that drew written responses from Ms. Henderson. First, the order filed August 24, 2016,—Order that Dennise Henderson File Statement Required by 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b)— noted the procedural history, recited the requirements of § 329, included a block quotation of all of § 329, explained that the court is authorized to scrutinize such fees for reasonableness, and included a block quotation of all of Rule 2016(b). Case 10–35624, Dkt. 60 (8/24/16). She was ordered to file the supplemental statement by September 12, 2016.

Upon review of Ms. Henderson's supplemental Rule 2016(b) statement that revealed nothing but "contingency," this court entered a second order—Order that Dennise Henderson File Copy of Contingency Fee Agreement and Justify Agreement Under 11 U.S.C. §§ 329(b) and 362(k)(1)—in which it was explained that contingency fee agreements are subject to § 329(b) review for reasonable value of services. It also noted that it is unclear whether a contingency fee agreement is consistent with the attorneys' fee structure set forth in § 362(k)(1). She was ordered to file by September 23, 2016, a copy of

her contingency fee agreement and to "provide an explanation justifying the agreed contingency fees as, first, representing the reasonable value of services within the meaning of § 329(b) and, second, how her contingency fee agreement is consistent with the attorneys' fee structure set forth in 11 U.S.C. § 362(k)(1)." Case 10–35624, Dkt. 70 (9/14/16).

Ms. Henderson responded by filing her Supplemental Briefing Regarding Attorneys' Fees. She acknowledged that the court has "authority under 11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure 2017(b) to order a debtor's attorney to return any attorneys' fees that exceeded the reasonable value of services provided." She noted that § 330 sets out the standard for determining reasonableness under § 329. And she asserted:

> it was never the intent of counsel to exceed the reasonable compensation under the [B]ankruptcy [C]ode. By separate declaration, I will file a time billing with the actual time expended and will only seek the lesser of the contingency fee agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method.

Case 10–35624, Dkt. 73 (9/23/16).

Next, she filed a Declaration of Dennise Henderson on Attorneys Fees and Costs in which she claimed 207.56 hours spent on the § 362(k)(1) adversary proceeding at a rate of $300.00 per hour (= $62,268), together with costs for depositions, transcripts, and trial binders of $6,606.55 for a total of $68,874.55. Case 10–35624, Dkt. 75 (9/26/16).

Based on this written exchange, this court concluded that the notice and opportunity for hearing requirement had been satisfied and that, in view of her concession that she was not seeking a contingen-

cy greater than $68,874.55, further concluded that no actual hearing was needed.

Ms. Henderson now claims that it was always her intent to collect from the Sundquists the full amount of her contingency to the extent that it exceeded lodestar compensation.

### 3

■ The counsel statements required by § 329(a) and Rule 2016(b) must include "full, candid, and complete" disclosure. Neben & Starrett v. Chartwell Fin. Corp. (In re Park–Helena), 63 F.3d 877, 882 (9th Cir. 1995), citing with approval, In re Plaza Hotel Corp., 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990).

■ Ms. Henderson's filed statement asserted that she did not intend to collect more than reasonable compensation and that she "will only seek the lesser of the contingency fee agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method," which she then fixed at $68,874.55.

She did not disclose that, as she now says, she always intended to enforce the full contingency against the Sundquists. If accurate, then the disclosure to the court was materially defective because it did not disclose full relevant information.

■ The law of the Ninth Circuit established in Park–Helena that "even a negligent or inadvertent failure to disclose full relevant information may result in denial of all requested fees" in the discretion of the court. Park–Helena, 63 F.3d at 882.

The record admits of two possibilities, each of which would, in the court's discretion, justify complete denial of attorneys' fees. If the undisclosed intention to enforce the full contingency is not a recent fabrication, then there was a failure to disclose full relevant information for which all fees

may be denied. If the undisclosed intention is a recent fabrication, then counsel has lied to the court in a declaration and papers filed in opposition to this motion for which sanctions are appropriate on a variety of theories. Either way, this court has the discretion to deny all fees.

### III

■ Ms. Henderson waived and renounced her right to claim for additional compensation on quantum meruit or any other theory in her responses to this court's request that she justify her contingency fee agreement under § 329(b) and § 362(k)(1).

First, she filed a statement saying: "it was never the intent of counsel to exceed the reasonable compensation under the [B]ankruptcy [C]ode. By separate declaration, I will file a time billing with the actual time expended and will only seek the lesser of the contingency fee agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method." Case 10–35624, Dkt. 73 (9/23/16).

Second, she filed a Declaration in which she claimed 207.56 hours spent on the § 362(k)(1) adversary proceeding at a rate of $300.00 per hour (= $62,268), together with costs for depositions, transcripts, and trial binders of $6,606.55 for a total of $68,874.55. Case 10–35624, Dkt. 75 (9/26/16).

She cannot now claim more.

### IV

■ Quantum meruit principles are not available to rescue counsel from cancellation of her contingency fee contract and the consequences of not disclosing her secret intent to enforce the contingency fee for a sum greater than a lodestar award.

■ Under state law, the voiding of a contingency fee contract disentitles the attorney to any fee greater than a "reasonable" fee. Cal. Bus. & Prof. Code § 6147(b) ("failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee").

■ Viewed as a matter of federal law, the equitable remedy of quantum meruit is not available following the denial of fees as a remedy for not complying with § 329(a) and Rule 2016(b). One who has not complied with the Code and Rules lacks the requisite clean hands. Law Offices of Ivan W. Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.), 40 F.3d 1059, 1063 (9th Cir. 1994), citing with approval, DeRonde v. Shirley (In re Shirley), 134 B.R. 940, 944–45 (9th Cir. BAP 1992).

■ Nor is quantum meruit available to counsel in state court following denial of fees by a bankruptcy court. The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure operate to preempt and preclude compensation on state-law theories not recognized by the Code and Rules.

■ As explained in Shirley, an attorney who has been denied fees in bankruptcy court may not pursue an alternative remedy in state court: "to allow such a reading would be to circumvent the operation of provisions of the Code and Rules concerning the employment of professionals and the payment of fees in connection with bankruptcy cases." Shirley, 134 B.R. at 944, cited with approval, Occidental Fin. Grp., 40 F.3d at 1063.

The California courts would agree that they should defer to the federal courts in such circumstances. The California Third District Court of Appeal ruled in the Sundquists' state-court appeal that a wrongful foreclosure action premised solely on violation of the bankruptcy automatic stay is a matter of exclusive federal jurisdiction. It follows that the state court would regard a fee dispute deriving from that particular dispute as also within federal jurisdiction.

Even if state-law quantum meruit is not preempted and precluded, this court determines, as a finding of fact, that the quantum merited, i.e. the "reasonable" fee under either federal or state law, by Ms. Henderson is $70,000.00.

### V

Ms. Henderson is threatening various actions in state court against the Sundquists, their successor counsel, and Bank of America for fees that "far exceed" $70,000.00 and for remedies, including punitive damages, under California's Uniform Voidable Transactions Act.

All such actions would constitute collateral attacks on this court's § 329(b) judgment that $70,000.00 is "reasonable" compensation for Ms. Henderson. All of the predicate facts are so inextricably intertwined with the § 362(k)(1) action that the bankruptcy court's judgment cannot be escaped other than by way of appeal. Miles v. Okun (In re Miles), 430 F.3d 1083, 1088–91 (9th Cir. 2005) (§ 303(i) damages remedy preempts state tort claims); Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1437–38 (9th Cir. 1995) (postpetition state law claims inextricably intertwined with bankruptcy sale); Gonzales v. Parks, 830 F.2d 1033, 1035–37 (9th Cir. 1987) (bankruptcy preempts state law abuse of process claims).

■ Collateral attacks attempting to tunnel back on this court's § 329(b) judgment are within § 1334(b) jurisdiction because this court has jurisdiction to interpret and enforce its orders. Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009).

Original federal subject-matter jurisdiction persists over § 329(b) matters as "arising under" the bankruptcy case. 28 U.S.C. § 1334(b).

Armed with original federal jurisdiction, the defendants in any such action would be entitled to remove them under the Bankruptcy Removal Statute. 28 U.S.C. § 1452(a). In short, they would come right back here to be adjudicated.

■ The proper course for Ms. Henderson to challenge this court's § 329(b) judgment determining "reasonable" compensation to be $70,000.00 is to continue to appeal that order pursuant to regular federal appellate procedure. 28 U.S.C. § 158. She already has filed a notice of appeal, which will become effective when final judgment is entered. Fed. R. Bankr. P. 8002(b)(2). She is welcome to avail herself of that opportunity.

VI

The question becomes what to do. Acting pursuant to § 329(b) and relying on her representations to the court in connection with her § 329(a) and Rule 2016(b) disclosures and Rule 2017 response that her full lodestar fees were $68,874.55 and that she wanted the "lesser" of that sum or her agreed contingency fee, the court awarded Ms. Henderson $70,000.00. It was persuaded that $70,000.00 was generous in light of the quality of work and that any greater amount would exceed the reasonable value of services. To avoid ambiguity, and acting consistent with her representation that she wanted the "lesser" of contingency or lodestar, it cancelled the contingency fee agreement as permitted by § 329(b).

Now she reveals that she always secretly intended to collect the full contingency from the Sundquists. That revelation puts her in the cross-hairs of the Ninth Circuit Park–Helena doctrine that gives this court

discretion to deny all fees. Park–Helena, 63 F.3d at 882. Her statements under § 329(a) and Rules 2016(b) and 2017 were anything but "full, candid, and complete."

She has been litigating in a manner that equates with an effort to sabotage the settlement her former clients have achieved. It is one thing to assert an attorneys' lien, which was unnecessary in view of this court's mandatory injunction requiring the Sundquists to pay her $70,000.00. It is quite another thing overtly to try to create hold-up value to extort a settlement by creating delay and by threatening voidable transfer litigation and punitive damages against successor counsel, former clients, and the settling defendant. That conduct tempts the court to invoke Park–Helena to set off against the $70,000.00 all fees and expenses incurred by the Sundquists in fending off her demands for "far more" than the "reasonable" $70,000.00.

Nevertheless, the fact remains that counsel undertook a representation that other lawyers declined. She stood up for the Sundquists. In the tradition of lawyers who find themselves needing to act as amateur psychologists to clients in emotion-charged situations, she held their hands and comforted them through the process. She may have flailed in water over her head in competition with a strong-swimming defense, but at least the facts were on her side. While there is much to be criticized about the quality of, and omissions in, her litigation presentation, it was adequate—barely adequate—to enable this court to discern the just result.

Accordingly, this court will exercise its discretion to refrain from using Park–Helena to reduce the $70,000.00 to zero or to some intermediate sum.

The Sundquists remain under a mandatory injunction to pay Ms. Henderson $70,000.00 from their recovery, enforceable by contempt. As the asserted lien is unnec-

essary in view of the mandatory injunction, the lien will be expunged in its entirety.

\* \* \*

In short, this court has authority and jurisdiction to limit counsel's fees under § 329(b) to the "reasonable" amount of $70,000.00. Although abstention over the fee dispute would be permissible, this court exercises its discretion to retain jurisdiction. Under § 329(b), the "reasonable" value of services rendered by debtor's counsel is $70,000.00. Although counsel did not disclose her fee arrangements in the "full, candid, and complete" manner required by law, this court exercises its discretion to leave untouched its $70,000.00 award. Proceedings in the nature of attempts to garner from other courts fees in excess of $70,000.00 are nevertheless matters of original federal jurisdiction per Judicial Code § 1334(b) as "arising under" the Bankruptcy Code and will be subject to removal to this court per Judicial Code § 1452.

This opinion contains findings of fact that supplement findings made and reported at Sundquist, 566 B.R. at 570–621.

An order will issue expunging the subject lien.